WILLIAM WHITAKER *et al. v.* W. R. POSTON *et al.*

(*Nashville.*    December Term, 1907.)

1. **TORTS.** **May be waived, and value of timber sued for, when.**
   In an action for wrongfully cutting and removing growing and
   standing timber, the owner may waive the tort and sue in as-
   sumpsit for the value of the timber.  A suit to recover the value
   of such timber is a waiver of the tort.  (*Post, pp.* 210-220.)

   Cases cited and approved:   Campbell v. Reeves, 3 Head, 227;
   Kirkman v. Phillips, 7 Heisk., 222; Allen v. Iron Co., 2 Shan-
   non's Cases, 388; Rhodes v. Crutchfield, 7 Lea, 518; Halleck
   v. Mixer, 16 Cal., 579, and citations; Thompson v. Clemens, 96
   Md., 196; Hunt v. Boston, 183 Mass., 303; Trull v. Granger, 8
   N. Y., 115; Shanks v. Edmondson, 28 Grat. (Va.), 804; Norden
   v. Jones, 33 Wis., 600.

2. **SAME.** **Same.  In action in assumpsit for value, waiving tort
   the six year statute of limitation, and not the three year stat-
   ute, is applicable.**
   When the tort is waived, and the suit is in assumpsit for the
   value of growing and standing timber wrongfully cut and
   removed from land, the six year statute of limitation is appli-
   cable, and the three year statute is inapplicable.  (*Post, pp.*
   212-220.)

   Code cited and construed:   Sec. 4470 (S.); sec. 3470 (M. & V.);
   sec. 2773 (T. & S. and 1858).

   Cases cited and approved:   Kirkman v. Phillips, 7 Heisk., 222;
   Rhodes v. Crutchfield, 7 Lea, 518; Allen v. Iron Co., 2 Shannon's
   Cases, 388.

3. **DEEDS OF CONVEYANCE.**  **Correction of clear and palpable
   clerical error in the description of the land.**
   Where the word "north" in the description of land conveyed is
   clearly shown by the context, the record title, and physical facts

to be a clerical error for the word "south," it will be so read. (*Post, pp.* 220-224.)

Cases cited and approved: Dyer v. Yates, 1 Cold., 135; Staub v. Hampton, 117 Tenn., 706.

4. **PRACTICE.** Concurrent finding of the clerk and master and the chancellor will not be reviewed by the supreme court, when. Where, under an ejectment bill to establish title to land, or to remove a cloud therefrom, and also to recover the value of the growing and standing timber wrongfully cut and removed therefrom, there was a reference to the clerk and master as to the value of the timber, and a concurrence of the clerk and master and chancellor in fixing the value of the timber, the supreme court will not review their finding, where there was evidence in the record supporting their concurrent finding. (*Post, p.* 224.)

5. **INTEREST.** On the value of timber wrongfully cut and removed is largely in the chancellor's discretion. In an ejectment bill to establish title to land, or to remove a cloud therefrom, and also to recover the value of the growing and standing timber wrongfully cut and removed therefrom, the allowance or disallowance of interest on the value of the timber cut is largely in the chancellor's discretion. (*Post, p.* 224.)

---

FROM JACKSON.

---

Appeal from the Chancery Court of Jackson County. —D. L. LANSDEN, Chancellor.

GEORGE G. HAILE, D. B. JOHNSON, and M. G. BUTLER, for complainants.

W. W. DRAPER, for defendants.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

This is an ejectment bill to establish title to a tract of land comprising about thirty acres, and also to recover the value of the timber cut therefrom by the defendants.

The chancellor adjudged title to the land in controversy to be in complainants, and pronounced a decree in their favor and against the defendants, for the value of the timber cut, for the sum of $458.64.    Defendants appealed, and have assigned errors.    Complainants deraign title by connected mesne conveyances to grant No. 3820, issued by the State of Tennessee, June 9, 1835, to Asa Lynn, comprising three hundred acres. Complainants also relied upon a continuous, peaceable, and adverse possession of said tract of land for a period of twenty years.    The boundaries of said land are fully set out and described in the bill.    Defendants deraign title to a 5,000 acre survey granted to M. Gore, assignee of S. L. Leonard, lying in the Sixth and Ninth civil districts of Jackson county, Tennessee, and comprising about 315 acres.    The boundaries of the land claimed by defendants are also fully described in the answer.    Defendants Robert Poston and J. C. Copeland purchased the lands described in the answer from M. G. Butler and M. L. Gore on the 19th day of September, 1889, which was duly evidenced by the deed of that date.    Some time afterwards one W. A. Over-

120  Tenn—14

ton purchased an interest in said lands, and at a still later period they were partitioned in kind. The portion of said lands immediately involved in this controversy are now owned by defendants Poston and W. A. Overton.

Defendant Poston, in his answer, expressly disclaimed title to all lands described in the bill outside of the boundaries set out in his answer. In his amended answer defendant pleaded and relied upon the statute of limitations of three years. Proof was taken, and the real issue presented was in respect of the proper location of the north boundary line of the Asa Lynn 300-acre grant.

On the hearing the chancellor decreed:

"That the complainants are the legal owners of the land in controversy, which is covered by grant No. 3820, based upon entry 1930, from the State of Tennessee to Asa Lynn for three hundred acres, dated the 9th day of June, 1835; that the true north boundary line of said grant begins at a stake on a ridge known as the 'Cedar Bluff,' which is the northeast corner of said grant, running thence west 197 poles to a stake at a point where three little hollows come together to make the Asa Lynn branch, thirty-three poles north of the northeast corner of his 200-acre tract, and that the deed from R. A. Cox to complainants' ancestor, J. P. Whitaker, dated the 10th day of May, 1887, runs with said north boundary line of said 300-acre tract and includes the lands in controversy from which the tim-

ber was taken; and that complainants and their said ancestor have been in the actual, adverse, continued, uninterrupted possession thereof, claiming to the full extent of the boundaries of said deed, and to the north boundary line of said 300-acre grant, from the date of said deed, which was registered on the 7th day of June, 1887, in the register's office of Jackson county, to the time when defendant entered, cut, and removed the timber mentioned in the bill, a period of more than seven years.    The boundary of land of defendant, mentioned and described in his answer, and in the deed from M. G. Butler and M. L. Gore to J. C. Copeland and W. R. Poston, does not conflict with the boundaries of said 300-acre grant, or said Cox deed, nor does it cover or include any of the land in controversy from which the timber came; but that the boundaries thereof run with the north boundary line of the 300-acre grant, and with the north boundary line of the Cox deed.    About five years ago the defendant entered upon complainants' land and cut and removed large quantities of valuable timber therefrom, which the court decreed upon the report of the master to be worth, at the time it was taken and as it stood on the land, the sum of $458.64."

The chancellor disallowed an item of interest, amounting to $129.79, on said recovery, which the master reported.    Defendant was granted a broad appeal, and complainants also appealed from so much of the decree of the chancellor as disallowed any interest on their recovery for the value of the timber cut and removed.

The errors assigned on behalf of defendant Poston
are as follows:

"First. The chancellor erred in overruling his plea
of the statute of limitations of three years, and in not
sustaining said plea and dismissing the bill.

"Second. He erred in finding and decreeing that
grant No. 3820 to Asa Lynn covers and includes the land
in controversy, and the land where the timber was cut.

"Third. He erred in holding and decreeing that the
deed from R. A. Cox to J. P. Whitaker, of date May 10,
1887, covers and includes the land in controversy, and
the land where the timber was cut.

"Fourth. He erred in finding and decreeing that the
true north boundary line of the said Cox deed was a
straight line from the northeast corner of the 300-acre
grant to the northeast corner of the 200-acre grant, and
in not dismissing the bill, in so far as it seeks to recover
any land lying north of this line, or the value of any
timber north of this line.

"Fifth. He erred in decreeing title in complainants
to the land in controversy, which lies north of the true
north boundary of the Cox deed, which is a straight line
from the northeast corner of the 300-acre tract to the
northeast corner of the 200-acre tract.

"Sixth. He erred in giving a decree against appellant
for any amount on account of timber cut and removed
by him from the land in controversy, and in taxing him
with the cost of the cause.

"Seventh. He erred in overruling the appellant's ex-

ceptions to the report of the master as to the value of the timber cut and removed by the defendant from the lands in controversy, and in confirming said report, because there is no evidence in the record to support his finding and decree fixing the value of said timber at $2.50 per foot across the stump, when the proof shows a much smaller amount to be the true value of said timber as it stood in the woods."

As already stated, the first assignment raises the question of the statute of limitations. The contention of defendant is that complainants' suit is barred by Shannon's Code, section 4470, as follows:

"Actions for injuries to personal or real property or actions for detention or conversion of personal property, must be brought within three years from the accrual of the right of action."

It is said, if this were an action for the detention or conversion of personal property, complainants might sue in *indebitatus assumpsit,* on the implied promise to pay for the timber, and recover, although more than three years had elapsed; but it is said such is not this case—that this is an action for injury to real property, and is covered by the first clause of Shannon's Code, section 4470.

It does appear that the timber was cut and removed more than three years before the commencement of this suit, and, if the section of Shannon's Code quoted supra applies, the present action is barred.

As already observed, the object of this bill is to remove a cloud from complainants' title, and also to recover the value of timber cut and removed.

It is conceded that the section of the Code invoked applies a statute of limitations of three years to an action for a tort. Is this a case where the tort may be waived, and a recovery had for the value of the timber in *indebitatus assumpsit* on the implied promise to pay for the timber?

In *Campbell* v. *Reeves,* 3 Head, 227, it was said:

"If a personal chattel, complainant may sue in trover, basing his action upon the tort, or he may waive the tort and recover the value of the property in assumpsit, basing his action upon the implied contract."

In *Kirkman* v. *Phillips' Heirs,* 7 Heisk., 222, it was said:

"Where personalty has been converted, the owner may sue for the property, or for damages for its detention, and the suit must be brought within three years, or he may waive the tort and sue for the value of the property as a debt, and the latter action will not be barred until six years."

But it is said in the present case that things attached to the realty, such as timber, are a part of the freehold, and realty is not the subject of conversion; hence it is argued that this is an action for injury to or trespass upon real property, and the suit must be brought within three years. Counsel insists that no case can be

found where a party has been held liable for trespass or injury to real estate after the expiration of three years, where the statute in question has been interposed as a defense.

In Wood on Limitation of Actions (Ed. 1883), sec. 21, the author says:

Without stopping to multiply, it may be said that assumpsit lies for the breach of any simple contract, and in all cases where a contract or promise exists by express act of the parties, or where the circumstances are such that the law will imply a promise; and it may be said that under this head a recovery may be had for tortious acts, properly embraced under the head of actions *ex delicto*, in all those cases where, from the circumstances of the case, the law will imply a promise on the part of the wrongdoer to reimburse the party injured by his act. The party under such circumstances may elect to waive the tort and sue in assumpsit. Especially is this the case where a person has wrongfully or unlawfully obtained the goods of another and sold them, or converted them to his own use, so that they cannot be returned *in statu quo*. Thus, where a person cut and carried away growing wood of another, and converted it so that it could not be returned in specie, it was held that the owner might waive the tort and sue upon an implied contract of sale, etc. . . . In a case where a tort may be waived and assumpsit brought therefor, the latter action will lie, even though an action for the tort is barred by the statute. This

was well illustrated in the case last cited, in which it was held that if a tenant for life has rendered accounts, for the remainderman, of timber cut by him during a period of more than six years before a bill in equity for the account of such timber, and for the value of it, the statute cannot be pleaded to the bill; and the reason assigned was that although, if the remainderman had brought trover, the tenant might, notwithstanding the rendering of the accounts, have pleaded the statute, yet he could not have done so if the remainderman had brought assumpsit."

In *Halleck* v. *Mixer,* 16 Cal., 579, Chief Justice Field said:

"Against the cutting of timber the owner of real property is entitled to the preventive remedy of injunction. Whilst the timber is growing it is a part of the realty, and its destruction constitutes that kind of waste the commission of which a court of equity will restrain. When once cut the character of the property is changed. It has ceased to be a part of the realty, and has become personalty; but its title is not changed. It belongs to the owner of the land as much afterwards as previously, and he may pursue it in whosesoever hands it goes, and is entitled to all the remedies for its recovery which the law affords for the recovery of any other personal property wrongfully taken or detained from its owner; and if he cannot find the property, to enforce its specific return, he may waive the wrong committed in its removal and use, and sue for the value as upon an im-

plied contract or sale"—citing *Brown v. Sax,* 7 Cow.
(N. Y.), 95; *Baker v. Wheeler,* 8 Wend. (N. Y.), 505,
24 Am. Dec., 66; *Wingate v. Smith,* 20 Me., 287; *Davis
v. Easley,* 13 Ill., 192.

See, also, *Thompson v. Clemens,* 96 Md., 196, 53 Atl.,
919, 60 L. R. A., 580; *Hunt v. Boston,* 183 Mass., 303,
67 N. E., 244; *Trull v. Granger,* 8 N. Y., 115; *Shanks v.
Edmondson,* 28 Grat. (Va.), 804; *Norden v. Jones,* 33
Wis., 600, 14 Am. Rep., 782.

We understand the authorities in Tennessee to be in
accord with the principles just stated. In *Rhodes v.
Crutchfield,* 7 Lea, 518, there had been a recovery in
ejectment of certain property known as "Jolly's Island,"
and soon after the termination of that action another
bill was filed to recover rents and profits during the
pendency of said action of ejectment and damages for
the destruction of timber. The question arose whether
the right of action to recover rents survives to the ad-
ministrator of the plaintiffs who died pending the action
of ejectment, where the case was revived and prosecuted
to judgment by their heirs. The court said:

"It has been held with us that torts for the conversion
of property may be waived, and action maintained upon
the promise implied by law to pay its value [citing
the cases]. This rule might be applied where the rents
and profits of lands have been taken and appropriated,
and upon this theory the action held to survive both in
favor of the administrator of the plaintiff and against
the administrator of the defendant. With us forms of

action have been abolished, and this bill may be taken
as asking for relief upon the facts of the case, waiving
the tort and suing for the value of the rents received
and converted. But on this aspect of the case another
question arises, and that is as to the statute of limita-
tions.

"In *Avent* v. *Hord,* 3 Head, 459, it was held: 'That
the time pending the action of ejectment could not be
relied on as a bar under the statute of limitations, but
that the recovery may be had from the demise laid in the
declaration.' This was upon the theory that the action
for mesne profits does not accrue until a recovery in
ejectment, and until the right accrued no statute could
run against it. In that case it was held that the tort
could not be waived and action brought for use and
occupation of the land, or, if it could be done at all,
it could only be as to profits accruing antecedently to
the demise in ejectment, because such action is inconsist-
ent with the action of ejectment. For a period after the
demise no action could be maintained for use and oc-
cupation, waiving the tort. But, as above indicated,
the theory upon which the action for rents may be held
to survive is that the tort may be waived and the action
maintained for use and occupation, or the value of the
rents converted. If so, this action could be maintained
without waiting for a recovery in ejectment, and would
consequently be barred by the statute of limitations. I
am therefore inclined to the opinion that a right of
action for the value of rents survives, but the recovery

must be limited to the period of six years next before the action was brought."

The result of the opinion was to modify the holding in *Avent* v. *Hord,* supra, so far as to adjudge that the tort may be waived and an action for use and occupation maintained, which rule would logically change the result as to the statute of limitations.

We regard this holding as a distinct application of the rule that the tort may be waived and a recovery had for the value of an article converted to a case where the tort was committed upon realty, and that the six-year statute would apply to an action for use and occupation.

In *Allen* v. *Iron Co.,* 2 Shannon, 388, the court said:

"The suit is for wood cut on plaintiff's land, and used by defendant, under a contract with one Lamb, who had made a verbal contract for purchasing the land, which was abandoned. It is claimed the action is in tort, and the attachment for debt. We have no form of action in matters of this kind, but plaintiff recovers on the facts of his case. If they entitle him to recovery, he is entitled to judgment. It has long been settled that in torts of this kind a party may waive the tort and sue for the price of the property in debt. This being so, as we have several times held, he may as well commence his suit by attachment as any other mode in a proper case."

It will be observed in that case this court again applied the rule to a tort committed on land by cutting

and removing timber, as in this case, wherein the court held that the plaintiff might waive the tort and sue for the value of the timber. In such a case the statute of limitations of six years would apply.

We are constrained, therefore, to overrule the plea of the statute of limitations of three years interposed on behalf of the defendants.

It is next assigned as error that the chancellor decreed that grant No. 3820 to Asa Lynn and the deed from R. A. Cox to J. P. Whitaker, dated the 10th day of May, 1887, embraces the land in controversy where the timber was cut.

The proof shows that complainants and their predecessors in title have been in possession of the land conveyed to J. P. Whitaker under the deed from R. A. Cox for more than seven years prior to the institution of the present suit, and the only controverted question is whether the northern boundary of the Cox deed includes the *locus in quo* of the present controversy.

It appears that grant No. 3820, for three hundred acres, issued by the State June 9, 1835, to Asa Lynn, embraced the *locus in quo* of the present controversy. R. A. Cox derived his title from that grant and held under a deed from Joseph Lynn. The latter held under a deed from his father, Asa Lynn, who conveyed to Joseph the northern half of grant No. 3820, known as the "Bugger Hill tract." Joseph Lynn becoming indebted to R. A. Cox and others, these creditors filed attachment bills and impounded a certain "tract of

land lying and being in Jackson county, in district 16, adjoining the lands of Alfred Lynn and others, being the same on which defendant (Joseph Lynn) now lives, or which is now occupied by his family, being the same tract of land deeded to Joseph Lynn by his father, Asa Lynn, sr., in his lifetime."

It is undoubted that the land so described in the Cox bill was the northern half of grant No. 3820 for three hundred acres, which had been conveyed by Asa Lynn, sr., to his son Joseph Lynn, the attachment debtor. The land thus attached was sold by decree of the chancery court at Gainsboro October 28, 1870, by B. B. Washburn, special commissioner, when R. A. Cox and other creditors purchased said land, and the title thereto was vested in them by the decree confirming the sale. R. A. Cox having acquired the interests of his copurchasers, on May 10, 1887, by deed duly recorded, conveyed said land to J. P. Whitaker, the ancestor of complainants.

The description of the land in the Cox deed was as follows:

"Beginning on a white oak, a conditional corner made between James and Joseph Lynn, standing on the point on the north side of Hopper's creek, and in the line of a three hundred-acre tract or entry made by Asa Lynn, and this being a part of said three hundred acres; thence west two hundred poles, more or less, to a beech, corner of a 200-acre tract entered by Asa Lynn; thence south, with said 200-acre line, two hundred poles, more or

less, to a beech on a point of a bluff in sight of A. C. Terry's house; thence up to said point to a line of an entry made by J. P. Whitaker; thence southeast to a chestnut and hickory corner made by J. P. Whitaker; thence a northeast course up Hopper's creek, with the conditional line made between Joseph Lynn and James Lynn, keeping with meanders of the hill up said creek, to the beginning corner, which is a white oak."

Now it will be observed, that it is the line "running west two hundred poles, more or less, to a beech, corner of a 200-acre tract entered by Asa Lynn," that has given rise to the present controversy. Complainants are holding the northern half of grant 3820 under the Cox deed, and it is this deed which fixes the western terminus of the northern boundary of said grant at the beech.

The grant itself, however, fixes the northern boundary as commencing at a stake on a ridge, "thence west 197 poles to a stake, thence south thirty-three poles to a beech, Asa Lynn's northeast corner of a 200-acre survey, and with said boundary one hundred and ninety-three poles to his northeast corner, in all 266½ poles, to the beginning, containing about three hundred acres."

It may be observed that the word "north" in the last line of this description is clearly shown by the context to be a clerical error for the word "south," and the grant must be so read. It will be observed that the beech called for in running the western line of the 300-acre grant is thirty-three poles from the stake called for in

the western terminus of the northern boundary line of the grant.

As already seen, the Cox deed fixes the western terminus of the northern boundary line at a beech, and then proceeds to run the western line: "Thence south, with said 200-acre line, two hundred poles, more or less, to a beech," etc.

Now, in order to approximate the length of this western line, it is necessary to begin at a stake in the northwest corner of the 300-acre grant; for the distance between the beech which is assumed to be the western terminus of the northern line in the Cox deed is only 152 poles from the last beech called for in the eastern line of the Asa Lynn 200-acre survey.

Again, the record discloses that the northern line called for in the Asa Lynn grant is a well-marked line, and it is very clear in our minds that R. A. Cox, in fixing the northern boundary of the land conveyed by him to J. P. Whitaker, did not intend to fix a boundary different from that called for in the Asa Lynn 300-acre grant.

As already seen, the land acquired by Cox in his attachment proceeding against Joseph Lynn was the northern half, or Bugger Hill tract, of the Asa Lynn 300-acre grant, which had been conveyed to Joseph Lynn by his father. It was this land which Cox clearly intended to convey to J. P. Whitaker. Cox at no time after his conveyance to Whitaker in 1887 ever claimed to own any land in that grant, and we think the record dis-

closes that it was his purpose to convey his entire holding to J. P. Whitaker. The northern boundary of the 300-acre Asa Lynn tract is established by a well-marked line, and the land in controversy is embraced within that boundary. *Dyer* v. *Yates,* 1 Cold., 135; *Staub* v. *Hampton,* 117 Tenn., 706, 101 S. W., 776.

Error is also assigned as to the value of the timber cut and removed by the defendant from the lands in controversy, because it is said there is no evidence in the record to support the decree fixing the value of said timber at $2.50 per foot across the stump. It suffices to say that the evidence of M. L. Gore and others supports the decree; and, since there is a concurrence of the master and chancellor in fixing the value, this court will not undertake to review this matter. Complainant has also assigned an error on the action of the chancellor in disallowing interest on the value of the timber reported by the master.

This was a matter largely in the discretion of the chancellor on the facts disclosed in the record, and we perceive no ground that would warrant us in reviewing his discretion on this subject.

Let the decree be affirmed.