JOSEPHINE MAYO *vs.* FRANK H. PURINGTON.

Cumberland. Opinion July 21, 1915.

*Attorney. Breach of Duty. Collection of Money. Duress. Fraud. Implied Promise. Injury. Receipts. Release.*

1. When one person has in his possession money which in equity and good conscience belongs to another, the law will create an implied promise upon the part of such person to pay the same to him to whom it belongs, and in such cases an action for money had and received may be maintained.

2. This form of action is comprehensive in its reach and scope and, though the form of the procedure is in law, it is equitable in spirit and purpose, and the substantial justice which it promotes renders it favored by the courts.

3. It lies for money paid under protest or obtained through fraud, duress, extortion, imposition or any other taking of undue advantage of the plaintiff's situation, or otherwise involuntarily and wrongfully paid.

4.  When the defendant is proved to have in his hands the money of the plaintiff,
    which in equity and good conscience he ought to refund, the law conclusively
    presumes that he has promised to do so, and the jury are bound to find accord-
    ingly; and after verdict, the promise is presumed to have been actually proved.

5.  The law requires the highest degree of honor and good faith from its own
    ministers.  It insists that the confidence of the suitor in the faithfulness and
    disinterestedness of his attorney and counsellor shall be fully deserved.

On motion by defendant.  Motion overruled.  Judgment on the verdict.

An action of assumpsit to recover of defendant for money had and received.  Plea, the general issue.  The jury returned a verdict for plaintiff for $104.13.  The defendant filed a general motion for a new trial.

The husband of the plaintiff while in service of the American Express Company received an injury.  Subsequent to his apparent recovery, he gave his release to that company.  His death occurring some months later, the company voted his widow a gratuity of $500. Desiring an increase of the amount she employed defendant, an attorney-at-law, to negotiate with the company to that end.  After correspondence with the company and an interview with one of its officials in Boston, Mass., the company undertook the payment of a further sum of $500 and a check for the amount of $1000, to order of plaintiff, was sent to the company's agent at Portland for delivery to her.  Notice of the sending of the check was given by the company to plaintiff as well as to defendant, who in turn gave notice to plaintiff and she repaired on the afternoon of its receipt to defendant's office.  Both then went to the office of the company and the check was given plaintiff upon her signing a receipt or release to the company.  Returning to defendant's office, plaintiff, at his direction or suggestion endorsed the check which she left with defendant undertaking to return to his office at a stated hour in the morning.  Plaintiff states that at this time defendant suggested a fee of $200.  He alleges, she denies that she then agreed to it.  At his office the next morning, she found the check had been cashed.  She testifies that he produced $800 and he that $1000 was produced.  She testifies that he proferred her $800, and, on her demurring to the charge of $200, he indulged in acts and language that alarmed her; that she said to him that she intended to consult an official of the company about the charge and would like a paper, that she could show him, disclosing the

amount of the charge and that she was not "through with this yet," and that he advised, if she was going to a lawyer, that she go to a good one. She then signed a receipt for $800 and he gave her one for $200 and she departed with the $800 and his receipt for $200. His evidence of the circumstances attending the exchange of receipts is conflicting in practically all particulars. He declares she left his office stating that she was fully satisfied. Almost immediately after leaving his office, she consulted an attorney-at-law and the present suit followed.

The receipts, which were interchanged, are as follows:

Portland, Maine, March 18th, A. D. 1913.

Received from Josephine Mayo,

Two hundred ($200.00) Dollars for Professional Services in collecting One Thousand ($1000.00) from the American Express Company and work, in connection therewith.

$200.                              FRANK H. PURINGTON, Atty."

"Portland, Maine, March 18th, A. D. 1913.

Received from Frank H. Purington,

Eight Hundred ($800.00) Dollars Balance of One Thousand ($1000.00) Dollars, collected by him from the American Express Company, as a gift to me on account of the death of my husband as claimed by said Co., which settles in *full* with the said Frank H. Purington for Professional Services in securing this said sum.

$800.00                            JOSEPHINE MARY MAYO."

*Frank H. Haskell*, for plaintiff.
*Symonds, Snow, Cook & Hutchinson*, for defendant.

SITTING: SAVAGE, C. J., SPEAR, CORNISH, KING, BIRD, HANSON, PHILBROOK, JJ. HALEY, J., dissenting.

BIRD, J. An action of assumpsit brought by plaintiff to recover of defendant $200 retained by him from the sum of $1000 claimed to have been collected for her by him, as an attorney-at-law. The

case was submitted to a jury which returned a verdict for $104.13. The case is before us upon the usual motion for a new trial presented by defendant.

The parties had exchanged receipts, the plaintiff's acknowledging the receipt of $800 as a balance of the sum collected and in full settlement with defendant for professional services in the premises, the defendant's being for $200 for such services. It was urged that the receipt of plaintiff was obtained by duress. The evidence, however, fails to sustain the claim. Nor is any actual fraud shown.

The plaintiff testified that she objected to the amount of the charge and before signing the receipt, stated to defendant that she "was not through with the matter yet." Immediately, or shortly, after leaving defendant's office, she consulted an attorney-at-law as to the reasonableness of the charge of defendant and her rights in the premises.

The principles of law involved are familiar but their rehearsal may not be untimely. When one person has in his possession money which in equity and good conscience belongs to another, the law will create an implied promise upon the part of such person to pay the same to him to whom it belongs, and in such cases an action for money had and received may be maintained; *Pease* v. *Bamford,* 96 Maine, 23, 25. This form of action is comprehensive in its reach and scope and, though the form of the procedure is in law, it is equitable in spirit and purpose and the substantial justice which it promotes renders it favored by the courts. *Dresser* v. *Kronberg,* 108 Maine, 423, 424; *Dow* v. *Bradley,* 110 Maine, 249, 251. It lies for money paid under protest, *Whitlock Co.* v. *Holway,* 92 Maine, 414, 416; or obtained through fraud, duress, extortion, imposition, or any other taking of undue advantage of the plaintiff's situation, or otherwise involuntarily and wrongfully paid; II Green. Ev., Sec. 117, Sec. 121; *Pritchard* v. *Sweeney,* 109 Ala., 651, 654, 657; *Gordon* v. *Camp,* 2 Fla., 422, 427, 429: See also *Humbird* v. *Davis,* 210 Pa. St., 311, 319. And where defendant has any legal or equitable lien on the money, or any right of cross action upon the same transaction, the plaintiff can recover only the balance, after satisfying such counter demand. II Green. Ev., Sec. 117: *Bartlett* v. *Bramhall,* 3 Gray, 257, 260. It is recognized as an appropriate form of procedure against attorneys and solicitors for neglect or breach of duty; *Stimpson* v. *Sprague,* 6 Maine, 470, 472.

Where the defendant is proved to have in his hands the money of the plaintiff, which *ex aequo et bono*, he ought to refund, the law conclusively presumes that he has promised to do so, and the jury are bound to find accordingly; and, after verdict, the promise is presumed to have been actually proved: II Green. Ev., Sec. 102. *Humbird* v. *Davis*, ubi supra.

When the parties to a contract are upon equal footing, each dealing for himself, without any relation of trust or confidence between them, the law will not permit any misleading, any deception of one party by the other.    But in such cases, the law will not presume fraud.    Such transactions are presumed to be valid, until proved to be invalid. *Burnham* v. *Heselton*, 82 Maine, 495, 500; 9 L. R. A., 90, and note.

When, however, the parties are not upon an equal footing, each acting for himself, but some relation of trust or confidence exists between them, touching the subject matter of the contract, the law is not so considerate or trustful.

"Especially does the law require the highest degree of honor and good faith from its own ministers.    It insists that the confidence of the suitor in the faithfulness and disinterestedness of his attorney and counsellor, shall be fully deserved.    It deprecates any purchase of any matter of litigation by an attorney from his client.    It greatly desires that the attorney should be satisfied with a reasonable compensation, without seeking to obtain speculative bargains from his client.    As said by one writer, such a transaction may be valid, but it is presumptively invalid.    Where any such bargain is made, the burden of sustaining it. is on the attorney.    No presumption will avail him.    He cannot get behind the presumption of innocence, and await the coming of hostile evidence.    He must be aggressive, and advance against the presumption of invalidity, and overcome it, if he can, by evidence of 'the perfect fairness, adequacy and equity of the transaction,' and particularly must he show that his client was informed of all material facts known to himself." *Burnham* v. *Heselton*, (EMERY, J.) supra.    See *Baker* v. *Humphrey*, 101 U. S., 494, 502.

Such is the scrutiny with which the law regards all transactions between attorney and client after the relation commences and while it exists.    And while contracts and dealings between them made before the business is undertaken or such as are made after the relation wholly ceases, are regarded as valid and unobjectionable as if

made between other parties not occupying fiduciary relations, and who are, in all respects, competent to contract with each other, all dealings between them while the relation exists are subject to the same rigorous investigation and rules which obtain between trustees and their beneficiaries. Usually great confidence is reposed in the attorney, and he is in an attitude to exert a strong influence over the actions and interests of the client. *Waterbury* v. *Leredo,* 68 Texas, 565.

It can, we conceive, require neither argument nor citation of authorities to establish the proposition that, while money collected for a client remains in the hands of the attorney, the fiduciary relation continues. If any question there be, it is resolved by the provisions of statute regarding the payment of money collected; R. S., 81, Secs. 32-36.

In the case at bar the jury has found that defendant had in his hands money of the plaintiff, which *ex aequo et bono,* he ought to refund and, now, after verdict, his promise to refund it is presumed to have been actually made. The only inquiry, therefore, open upon the motion is whether or not the jury was warranted upon the evidence in finding that defendant had in his hands money of plaintiff which, in equity and good conscience, he ought to refund. The receipts were open to explanation by the parties. The burden upon the issue was with defendant, as is now the burden of showing that the verdict is clearly wrong. We are forced to conclude that there was sufficient evidence, if believed by the jury, to sustain its finding. See *Kidd* v. *Williams,* 132 Ala., 140; 56 L. R. A., 879. *Shirk* v. *Neible,* 156 Ind., 66; 83 Am. St., Reps. 150, 154, 160.

The motion for new trial must, therefore, be overruled.

*Motion overruled.*
*Judgment on the verdict.*