LIPMAN, WOLFE & CO. v. PHŒNIX ASSUR. CO., Limited.

(Circuit Court of Appeals, Ninth Circuit. May 26, 1919.)

No. 3262.

1. MONEY RECEIVED ⬉1—GROUNDS OF ACTION.

Assumpsit for money had and received will lie in general, whenever defendant has received money which is the property of plaintiff, and which the defendant is obliged by natural justice and equity to return; it being unnecessary that there be an actual contractual relation.

2. PAYMENT ⬉82(1)—RECOVERY—VOLUNTARY PAYMENTS.

One cannot recover money voluntarily paid with full knowledge of all the facts, although no obligation existed; but money may be recovered where paid under circumstances of fraud, misrepresentation, and threats amounting to duress, which prevents the free exercise of the will, or where it is paid on a wrongful demand to save the party paying from some great or irreparable mischief or damage, from which he could not otherwise be saved.

3. PAYMENT ⬉89(3)—RECOVERY—COMPLAINT—SUFFICIENCY.

Complaint seeking to recover from an insurance company an amount which the inexperienced officers of plaintiff corporation repaid to the company, when they were threatened by a committee of the leading insurers with publication of charges that the insurance money had been fraudulently obtained, etc., held to state a cause of action.

4. LIMITATION OF ACTIONS ⬉28(1)—RUNNING OF STATUTE—WHAT STATUTE GOVERNS.

An action to recover from an insurance company moneys repaid to it by plaintiff, because of threats of a committee of leading insurers that they would publish charges that the money had been fraudulently obtained, falls within the six-year period of limitation established by L. O. L. § 6, for actions upon contracts or liability express or implied, and not within the two-year period prescribed by section 8 for injuries not arising on contract.

In Error to the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Action by Lipman, Wolfe & Co., a corporation, against the Phœnix Assurance Company, Limited. From a judgment dismissing the complaint, plaintiff brings error. Reversed and remanded.

The plaintiff in error alleged in its complaint that it was engaged in business conducting a department store at Portland, Or., and that on March 3, 1903, it suffered loss from a fire in adjacent premises, and upon the adjustment of the loss the defendant in error paid to the plaintiff in error on its insurance policy on the stock of merchandise the sum of $5,117.69; that thereafter, on March 24, 1910, owing to threats made by a committee known as the Gallegos Committee, acting on behalf of the defendant in error and some 40 other insurance companies, to publish charges that said insurance money had been fraudulently obtained, that there was no real or actual injury to said stock of merchandise, that the plaintiffs in error dishonestly and fraudulently procured an adjustment and appraisal of loss when there was no loss, and other similar charges and threats of suit to recover said money and to publish

⬉For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to the world the alleged fraudulent acts of the plaintiff in error, and by the concerted action of all said insurance companies to expose to public opprobrium the officers of the plaintiff in error, the latter, in order to save its credit and the good name of the former owners of the business and its own, and to avoid the threatened injury to its future prosperity and success, was induced and compelled to repay to the defendant in error the said sum of money so received in adjustment of said loss; that all of said charges so made against the plaintiff in error and its officers were false and fraudulent; that to further oppress the plaintiff in error, and compel it to comply with said demands, the Gallegos Committee unjustly and without cause, and with intent to impair the insurance and financial credit of plaintiff in error, caused to be canceled policies of insurance on the property of the plaintiff in error amounting to more than $100,000; that the business of the plaintiff in error was founded in 1880 by Solomon Lipman and Adolphe Wolfe; that on July 7, 1909, Solomon Lipman died, leaving surviving him his widow and two sons, W. F. and I. N. Lipman, both young, who succeeded to his interest in the corporation; that, at the time when the defendant in error obtained from the plaintiff in error the money which is sued for, Adolphe Wolfe was absent from the state, caring for his sick wife; that W. F. and I. N. Lipman were in a state of nervous tension for the success of the business left them by their father; that all executive matters in said business had theretofore been handled by their father and Adolphe Wolfe, and that their business judgment was palsied, their sense of business proportion paralyzed, and their faculties for caring for the interests of the plaintiff in error were entirely overpowered, and they were then arranging for the construction of a large ten-story department store building, all of which circumstances were taken advantage of by the said Gallegos Committee, at a time when the said W. F. and I. N. Lipman were mentally confused and incapable of getting any full comprehension of the circumstances and deprived of free and voluntary will in the matter; that the defendant in error, in so obtaining said money by duress and threats, acted through the Gallegos Committee, which represented, not only the defendant in error, but numerous other insurance companies which had policies of insurance, and which likewise paid the plaintiff in error losses for the injuries resulting from the fire; that in the year 1910, in another suit pending in a state court of the state of Oregon, the said false, untrue, and unfounded allegations against the plaintiff in error were made public. And the complaint alleged that the defendant in error is indebted to the plaintiff in error in the said sum of $5,-117.69, as for money had and received, and judgment was demanded for said sum and interest thereon from the date of the payment thereof. A demurrer was interposed to the complaint on the grounds (1) that it does not contain facts sufficient to constitute a cause of action; (2) that the action was not commenced within the time limited by the Code of the state of Oregon; and (3) that the plaintiff had been guilty of laches in commencing the action. The demurrer was sustained on the second ground, the court ruling that the action was barred by section 8, Lord's Oregon Laws. To review the judgment thereupon entered, dismissing the complaint, the cause is brought before us by writ of error.

William C. Bristol, of Portland, Or. (F. E. Grigsby and Ernest W. Hardy, both of Portland, Or., of counsel), for plaintiff in error.

W. F. Magill, of Portland, Or., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] The first question which arises is whether the complaint states a cause of action. In Cary v. Curtis, 3 How. 236, 247 (11 L. Ed. 576), the court said:

"The action of assumpsit for money had and received, it is said by Lord Mansfield, Burr, 1012, Moses v. MacFarlen, will lie in general whenever the

defendant has received money which is the property of the plaintiff, and which the defendant is obliged by the ties of natural justice and equity to refund. And by Buller, Justice, in Stratton v. Rastall, 2 T. R. 370, 'that this action has been of late years extended on the principle of its being considered like a bill in equity, and therefore, in order to recover money in this form of action, the party must show that he has equity and conscience on his side, and could recover in a court of equity.' These are the general grounds of the action as given from high authority."

In Bither v. Packard, 115 Me. 306, 312, 98 Atl. 929, 932, the court said:

"It is elementary law that, when one person has in his possession money which in equity and good conscience belongs to another, the law will create an implied promise upon the part of such person to pay the same to him to whom it belongs, and in such cases an action for money had and received may be maintained. This form of action is comprehensive in its reach and scope, and though the form of proceeding is in law it is equitable in spirit and purpose and the substantial justice which it promotes renders it favored by the courts. It lies for money paid under protest, or obtained through fraud, duress, extortion, imposition, or any other taking of undue advantage of the plaintiff's situation, or otherwise involuntarily and wrongfully paid. Where the defendant is proved to have in his hands the money of the plaintiff which, ex æquo et bono, he ought to refund, the law conclusively presumes that he has promised to do so"—citing Mayo v. Purington, 113 Me. 452, 455, 94 Atl. 935.

To the same effect are Gaines v. Miller, 111 U. S. 395, 4 Sup. Ct. 426, 28 L. Ed. 466; Taylor v. Currey, 192 Ill. App. 502; Early v. Atchison, T. & S. F. Ry. Co., 167 Mo. App. 252, 149 S. W. 1170; Cullen v. Sea Board Air Line, 63 Fla. 122, 58 South. 182; Knight v. Forbes, 19 Ga. App. 320, 91 S. E. 445, in which the court said that such an action needs for its support no actual contractual relation, for the law will imply a quasi contractual relation to uphold it whenever the circumstances so require.

[2, 3] One cannot recover money voluntarily paid with a full knowledge of all the facts, although no obligation to pay existed, but money may be recovered where paid under circumstances of fraud, misrepresentation, and threats amounting to a duress which prevents the free exercise of the will, or where it is paid on a wrongful demand, to save the party paying from some great or irreparable mischief or damage from which he could not otherwise be saved, and while money paid under apprehension, or induced by threats of suits or actions, is not in general paid under such duress as to make the payment compulsory, such threats may, in connection with other circumstances, such as the inexperience of the person threatened, or the peril to which his business is exposed, if the threats are carried out, constitute such duress that money paid under the influence thereof may be recovered as for money had and received. Carew v. Rutherford, 106 Mass. 1, 8 Am. Rep. 287; Lehigh Coal & Nav. Co. v. Brown, 100 Pa. 338; Guetzkow Bros. Co. v. Breese, 96 Wis. 591, 72 N. W. 45, 65 Am. St. Rep. 83; Vyne v. Glenn, 41 Mich. 112, 1 N. W. 997; Baldwin v. Hutchison, 8 Ind. App. 454, 35 N. E. 711; Brown v. Worthington, 162 Mo. App. 508, 142 S. W. 1082; Rees v. Schmits, 164 Ill. App. 251; Sartwell v. Horton, 28 Vt. 370; Parmentier v. Pater, 13 Or. 121, 9 Pac. 59.

Here the complaint alleges the inexperience of the officers of the plaintiff, their mental disturbance in view of the threats and fraudulent representations, the large pecuniary interest involved in their business, and the powerful combination arrayed against them, represented by the Gallegos Committee, acting for and on behalf of more than 40 insurance companies, practically the whole insurance world, with power to destroy the credit of the plaintiff in error, and to prevent it from obtaining insurance upon its property. The combination against the plaintiff in error which is set forth in the complaint is not unlike that which was condemned in Carew v. Rutherford, supra, and we think the facts alleged are sufficient to constitute a cause of action for money had and received.

[4] The second question here is which of the two following provisions of the statute of limitations of Oregon applies to the cause of action,

"Sec. 6. Within six years: An action upon a contract or liability express or implied  *  *  * "

"Sec. 8. Within two years: An action for assault, battery, false imprisonment, for criminal conversation, or for any injury to the person or rights of another, not arising on contract, and not herein especially enumerated."

The action for money had and received has always been regarded as an action in assumpsit, based upon a promise to repay which the law implies, where one has possession of money which in equity and good conscience belongs to another. "Having money that rightfully belongs to another, creates a debt; and whenever a debt exists without any express promise to pay, the law implies a promise, and the action always sounds in contract." Byxbie v. Wood, 24 N. Y. 607, 610. In that case it was held, that where one person fraudulently procures money of another, the law will imply a promise to repay it, and the injured party need not sue in tort, but may sue in assumpsit for money had and received. In Brewer v. Dyer, 7 Cush. (Mass.) 337, 340, the court said:

"The law, operating on the act of the parties, creates the duty, establishes the privity, and implies the promise and obligation, on which the action is founded."

That there is in such a case an implied promise to pay is generally recognized in the authorities, and it is so held in the state of Oregon. First National Bank v. Hovey, 34 Or. 162, 55 Pac. 535; Hornefius v. Wilkinson, 51 Or. 45, 93 Pac. 474. In 1 Wood on Limitations (4th Ed.) page 95, it is said:

"Without multiplying instances, generally assumpsit lies for the breach of any simple contract, and in all cases where a contract or promise exists by express act of the parties, or where the circumstances are such that the law will imply a promise; and it may be said that under this head a recovery may be had for tortious acts properly embraced under the head of actions ex delicto in all those cases where, from the circumstances of the case, the law will imply a promise on the part of the wrongdoer to reimburse the party injured by his act."

Page 96:

"In cases where a tort may be waived, and assumpsit brought therefor, the latter action will lie, even though an action for the tort is barred by the statute."

Among the cases cited are Ivey's Adm'r v. Owens, 28 Ala. 641; Lamb v. Clark, 5 Pick. (Mass.) 193; Kirkman v. Philips' Heirs, 7 Heisk. (Tenn.) 222; Miller v. Miller, 7 Pick. (Mass.) 133, 19 Am. Dec. 264; Whitaker v. Poston, 120 Tenn. 207, 110 S. W. 1019; Fanson v. Linsley, 20 Kan. 235; Norden v. Jones, 33 Wis. 600, 14 Am. Rep. 782.

We may assume that the statute of limitations of Oregon was framed with a view to existing recognized forms of actions, and that when a limitation of six years was placed upon the commencement of actions "on a contract or liability express or implied," it was intended to apply the same to all actions in assumpsit including that for money had and received. Such seems to have been the construction placed upon similar statutes of limitation in other states. In Trower v. City and County of San Francisco, 157 Cal. 762, 109 Pac. 617, the court said:

"The action is one to recover moneys unjustly exacted and retained by defendant. It is assumpsit for money had and received, and therefore an action 'upon a contract, obligation or liability not founded upon an instrument in writing.'"

In Kentucky it was held that an action for money had and received was governed by the statute of limitations applicable to cases "arising on a contract express or implied." Clark v. Logan County, 138 Ky. 676, 128 S. W. 1079. In Missouri, the statute barred after five years all actions on "contracts, obligations or liabilities, express or implied." It was held that the action for money had and received was governed thereby. Garrett v. Conklin, 52 Mo. App. 654. In Leather Manuf. Bank v. Merchants' Bank, 128 U. S. 26, 9 Sup. Ct. 3, 32 L. Ed. 342, the action was brought to recover money paid on a forged check. The court held that under the New York statute the action was one on a "contract, obligation or liability, express or implied." The action in the present case, having been commenced within six years, we think the cause of action was not barred.

The judgment is reversed, and the cause is remanded to the court below for further proceedings.