GUETZKOW BROTHERS COMPANY, Respondent, vs. BREESE and
another, Appellants.

*May 26 — June 24, 1897.*

*Duress of goods: Landlord and tenant: Agreement to insure: Appor-*
*tionment of insurance money.*

96      591
59 LRA   300

1. Where a lessee, who, in compliance with the terms of the lease, had
   taken out insurance policies covering the lessors' interest in the
   premises as well as his own, was so situated after a loss that he
   must obtain the insurance money at once in order to go on with
   his business, the refusal of the lessors to execute proofs of loss, or
   indorse drafts given in payment thereof, unless the lessee would
   agree to pay them a considerable sum in excess of what was le-
   gally due them under the policies, and which the lessee did not
   owe them, constituted duress of goods; and the lessee may recover
   back the sum so unjustly exacted.

2. By the terms of a lease the lessors were given a lien for their rent
   upon an engine and boiler which the lessee was to place on the
   premises, and the lessee was required to keep the buildings and
   the engine and boiler insured for not less than $6,200. The lessee
   took out several policies, payable to the lessors and to itself, as their
   interests might appear. Each thousand dollars of insurance was
   divided into items covering different classes and pieces of prop-
   erty, the total amount on the main building being $3,333.26, on
   the boiler house $833.50, and on the engine and boiler $3,333.26.
   The main building and its contents were totally destroyed. *Held,*
   that the agreement to insure had been complied with, and that
   the lessors were entitled only to the amount for which that build-
   ing had been insured, even though such amount was less than its
   value.

APPEAL from a judgment of the circuit court for Milwau-
kee county: D. H. JOHNSON, Circuit Judge. *Affirmed.*

This is an action to recover $506.74, alleged to have been
extorted from plaintiff corporation by the defendants by
duress of goods. The action was tried by the court. There
were many facts which are not disputed, and these facts
may be briefly stated as follows:

In April, 1892, the firm of Grant, Breese & Co. owned

certain lots in the city of Milwaukee, on which they constructed at about that time a large factory building and a smaller building for a machine shop and boiler house. These buildings were constructed for them by the *Guetzkow Bros. Co.*, and cost $6,200. On the 30th day of April, 1892, Grant, Breese & Co. leased to the plaintiff corporation said lots and the buildings thereon for a term of ten years from the 1st of May, 1892, at an annual rental of $1,620, to be paid in monthly instalments in advance. By the terms of said lease, among other things, the lessors agreed to rebuild the buildings in case they were destroyed by fire, to keep the docks adjoining the premises in good repair and the slip properly dredged, to maintain a railroad side track upon the premises, to pay all taxes on the premises, the lessee, however, to reimburse the lessors for such amount of the taxes as were levied upon the buildings. The lessee, upon its part, agreed to pay the rent as specified, to quietly deliver up the premises at the end of the term in as good condition as when it took possession, inevitable accident and ordinary wear and loss by fire without its neglect excepted; "also to keep the buildings upon said premises and the machinery contained constantly insured in a good responsible insurance company or companies for not less than six thousand two hundred dollars, payable, in case of loss, to the said lessors as their interest may appear." It was further provided in the lease that the lessors should have a lien on the dry kiln and barn to be erected by the lessee upon the premises, and upon the engine and boiler to be placed by said lessee in the aforesaid engine house,— said dry kiln, barn, and boilers to cost not less than $5,800,— to secure the payment of the rent and any other sum to be paid by the lessee to the lessors under the lease; the lessee having the right to remove said dry kiln, barn, engine, and boiler at the expiration of the lease, and after full payment of any sum due thereon. The remaining provisions of the lease are not necessary to be stated.

Guetzkow Brothers Co. vs. Breese and another.

Immediately upon the execution of this lease the plaintiff corporation went into possession of the property, and conducted its business of contracting and building thereon up to the time of the fire which destroyed the larger building or machine shop March 31, 1895. The plaintiff corporation placed in the buildings a large amount of machinery, as was necessary for conducting its business, and also placed upon the premises a considerable quantity of manufactured and unmanufactured lumber.

In February, 1895, there was upon the entire premises $25,000 in insurance, mostly in policies of $1,000 each, which had been placed thereon by the plaintiff corporation. The beneficiaries named in each of the policies were "*L. L.* and *W. L. Breese* and *Guetzkow Bros. Co.*, as interest may appear." (*L. L.* and *W. L. Breese* had succeeded Grant, Breese & Co. in the ownership of the premises prior to this time.) Each thousand dollars of insurance was divided into items covering different classes and pieces of property. Thus out of each $1,000 of insurance $133.33 was placed upon the machine shop, $333.33 on the fixed and movable machinery of all descriptions, $300 on the lumber and stock of all descriptions, $33.34 on the boiler and engine house, $133.33 on the engine, boiler, and appurtenances. There were also smaller items, which it is unnecessary to state. By computation it will be easily seen that the amount of insurance upon the factory building in the whole $25,000 of insurance was $3,333.26, and upon the brick engine house $833.50; thus making the amount of insurance upon the buildings owned by the defendants $4,166.76, and leaving a balance of $20,833.24 upon the machinery, stock, and other property owned by the plaintiff corporation.

February 15, 1895, there was a small fire, which destroyed property to the amount of a little over $500 belonging to the plaintiff corporation, and in which the *Breeses* had no interest. This loss was adjusted, and after its adjustment

the gross amount of insurance was $24,458.46, but the protection to the defendants stood the same as before. On the 31st of March, 1895, a fire occurred which totally destroyed the factory building, but not the engine house. At this time the plaintiff corporation was, in arrears of rent between $1,800 and $1,900. It became necessary at once to make out proofs of loss, and then occurred the difficulty which gave rise to this action. There is a dispute in the testimony as to just what took place between the parties at this time. The claim of the plaintiff is that the defendants insisted that they must have $4,000 out of the insurance money on account of the loss of the building, and that they would not sign the proofs of loss until they were assured that sum; nor would they sign the drafts payable to the joint order of both parties until they were assured that they would receive $4,000. The plaintiff also claims that at that time it had numerous contracts on hand for the construction of buildings, and that it was absolutely necessary for it to settle the losses at once in order to go on with its business, and that by stress of these facts it was compelled under duress to agree to pay $666.74 to the defendants, which they were under no legal obligations to pay, and that they did thereafter pay $506.74 of such sum. The claim of the defendants, on the other hand, is that under the lease they were entitled to assurance payable to them to the amount of $6,200 upon the buildings and any interest which they might have in the machinery; and that the plaintiff's failure to keep the insurance as the lease provided did not prevent the defendants, as between them and the plaintiff, from claiming the full amount which ought to have been carried. They further claim that the factory building was worth at least $4,000, and more than that proportionately, and that they were, therefore, entitled to be paid out of the insurance $4,000, if not more. The defendants deny any compulsion, but claim that the matter was simply a differ-

ence of opinion as to their legal rights, and that it was finally settled by agreement without duress, by which they were to receive $4,000, instead of $3,333.26.

The findings of fact made by the trial court were as follows:

"First. That shortly before the 31st of March, 1895, the plaintiff and the defendants jointly applied to various fire insurance companies for, and then obtained, various policies of fire insurance against loss by fire issued to them, and payable as their interests might appear on their properties thereafter, then respectively situated upon the premises described in the complaint, to wit, on the three-story frame building, the property of the said defendants, policy for the sum of $3,333.26; on the property of the plaintiff, consisting of machinery, office furniture and fixtures, lumber, manufactured and unmanufactured, on the said premises, policies in the aggregate of $21,125.20.

"Second. That afterwards, on the 31st day of March, 1895, the said three-story building was destroyed by fire without fault of the plaintiff, and at the same time the property of the plaintiff so as aforesaid insured was in like manner destroyed by fire without fault of the plaintiff.

"Third. That thereafter the losses of the plaintiff and defendants were adjusted by the several insurance companies, and such adjustments accepted by the parties, plaintiff and defendants, as follows: The defendants' said losses at $3,333.26, and no more; and the plaintiff's losses at $14,444.40.

"Fourth. That by the terms of said policies of insurance the defendants and plaintiff were required to unite in making proofs of their said losses to said insurance companies, and the amount as aforesaid, due to the plaintiff and defendants, to be made payable to their joint orders.

"Fifth. That at the making of said proofs of losses the defendants did wrongfully and unlawfully demand of and

from the plaintiff the sum of $666.74, not then justly owing by the plaintiff to said defendants, or any part thereof; and did then and there, by duress and bad faith, demand of the plaintiff, as condition of the defendants uniting with it in procuring the money for its said losses, the sum of money last aforesaid, to which, nor any part thereof, the defendants well knew then and there they were not entitled; and that the plaintiff, in order to secure its insurance of $14,444.40 from the said insurance companies, was thereby compelled to agree to and with the defendants under duress and compulsion to pay the said sum of $666.74 aforesaid to the defendants in order to obtain its said insurance. And the defendants refused to unite with the plaintiff in collecting its insurance moneys until the plaintiff had agreed to pay the sum of $666.74. And the plaintiff would have been unable to obtain the moneys due from said insurance companies without such agreement.

" Sixth. That after such proofs of losses were made and the same adjusted as aforesaid, and after checks for the payment thereof had been issued payable to the joint order of the plaintiff and defendants, the defendants further refused to indorse said checks, or either of them, so as to enable the plaintiff to receive the amount of its said insurance, or any part thereof, until the said plaintiff had agreed to pay the last-named sum of $666.74. And in pursuance of such agreement the plaintiff did then and there pay to defendants on account of said unjust and unlawful claim the sum of $506.74, which sum was paid in pursuance of said contract of duress and compulsion, and which would not otherwise have been paid by the plaintiff. And the several allegations of the answer are unproven and untrue in fact."

From these facts the court concluded that the plaintiff was entitled to judgment for $506.74, with interest from March 31, 1895, and from said judgment the defendants appealed.

For the appellants there were briefs by *Winkler, Flanders,*

*Smith, Bottum & Vilas,* and oral argument by *H. K. Gibson.* They contended, *inter alia,* that the facts found did not constitute duress.   2 Greenl. Ev. § 301; 6 Wait, Act. & Def. 660, par. 8; *Seymour v. Prescott,* 69 Me. 376; *York v. Hinkle,* 80 Wis. 626; *Kruschke v. Stefan,* 83 id. 373; *Peyser v. New York,* 70 N. Y. 497; *Flower v. Lance,* 59 id. 603; *Emery v. Lowell,* 127 Mass. 138; *Cable v. Foley,* 45 Minn. 421; *Lamson v. Boyden,* 57 Ill. App. 232; *Custin v. Viroqua,* 67 Wis. 314; *Natcher v. Natcher,* 47 Pa. St. 496; *Detroit v. Martin,* 34 Mich. 170; *McCormick v. Valsack,* 4 S. Dak. 67; *Goebel v. Linn,* 47 Mich. 489; *Preston v. Boston,* 12 Pick. 13; *Miller v. Coats,* 4 Thomp. & C. 429.

*N. S. Murphey,* of counsel, for the respondent, argued, among other things, that duress of goods may exist when one is compelled to submit to an illegal exaction in order to obtain them from one who has them in possession, but refuses to surrender them unless the exaction is submitted to.   6 Am. & Eng. Ency. of Law, 57–60, note 4; *Cobb v. Charter,* 32 Conn. 358; *Astley v. Reynolds,* 2 Strange, 915; *Smith v. Bromley,* 2 Doug. 696, note; *Ashmole v. Wainwright,* 2 Q. B. 837; *Harmony v. Bingham,* 12 N. Y. 99; *Scholey v. Mumford,* 60 id. 498; *Chase v. Dwinal,* 7 Me. 134; *Chandler v. Sanger,* 114 Mass. 364; *Spaids v. Barrett,* 57 Ill. 289; *Foss v. Hildreth,* 10 Allen, 76; *City Nat. Bank v. Kusworm,* 88 Wis. 202. The principle applies equally well when money is extorted as a condition to the exercise of any other legal right.   *Bates v. New York Ins. Co.* 3 Johns. Cas. 238; *Beckwith v. Frisbie,* 32 Vt. 559; *Adams v. Reeves,* 68 N. C. 134.  Or when money is paid upon a wrongful demand to prevent great and irreparable mischief.   *Corkle v. Maxwell,* 3 Blatchf. 413; *Ladd v. Southern C. P. & Mfg. Co.* 53 Tex. 172; *Dickerman v. Lord,* 21 Iowa, 338; *Vyne v. Glenn,* 41 Mich. 112; *Briggs v. Boyd,* 56 N. Y. 289.

WINSLOW, J.   We entertain no doubt that under the facts found by the circuit court there was a case of duress of

goods. The case was this: The plaintiff could not obtain the insurance money due it unless the defendants joined in executing the proofs of loss and in indorsing the drafts. The defendants refused to do these things unless the plaintiff would pay them $666.74, which it did not owe. The plaintiff was in a position where it must obtain its insurance money at once in order to go on with its business and fulfill valuable outstanding contracts, or it would suffer great loss. Under these circumstances it submitted under protest to the unjust demand in order to obtain its own money from the insurance company. This makes a case of legal duress of goods. *Vyne v. Glenn*, 41 Mich. 112; *Corkle v. Maxwell*, 3 Blatchf. 413; *Scholey v. Mumford*, 60 N. Y. 498; *Cobb v. Charter*, 32 Conn. 358.

The question is, therefore, whether the findings of fact are sustained by the evidence. We have carefully read the evidence, and are satisfied that as to the greater part of the facts found the evidence is amply sufficient to sustain the findings. Among these facts so sustained by the evidence are the following: That the plaintiff's losses by the fire were over $14,000; that the plaintiff was unable to obtain the money from the insurance companies without the signature of the defendants to the proofs and checks; that the defendants refused to sign until the plaintiff had contracted to pay $666.74 out of the insurance moneys to the defendants; that the plaintiff would have suffered great hardship and injury in its business if it had been deprived of its insurance moneys for any considerable time; and that the plaintiff actually paid the sum of $506.74 upon said forced agreement. The only other fact remaining necessary to be found in order to establish a good case is the fact that the claim of the defendants against the plaintiff for $666.74 was an unjust and unfounded claim. This is, of course, a vital fact, and if it did not exist — i. e. if the claim was in fact a valid one — the action certainly will not lie, because it is of the gist of the action that the money extorted be upon a groundless claim.

It is vigorously claimed that the evidence shows the claim of the defendants to receive $4,000 for the building was a valid one. This contention is based upon the agreement to insure contained in the lease, which, the defendants claim, has not been carried out. This agreement was, in effect, that the plaintiff would keep the buildings and machinery insured for not less than $6,200, payable, in case of loss, to defendants, as their interest may appear. No amount is specified which should be put upon any one building or upon the machinery. That was apparently left to the judgment of the plaintiff. Now, was this agreement fulfilled? If it was, then the defendants had no just claim for any more than the amount for which the building destroyed was insured. The evidence shows that all the policies were joint policies, and there seems no doubt but that this fact was known to the defendants. They were payable to the plaintiff and to the defendants as their interest might appear. There was undisputedly $3,333.26 of the insurance upon the main building which was destroyed, $833.50 upon the engine and boiler house, and $3,333.26 upon the engine and boiler and connections; thus making about $7,500 in gross upon the buildings and engine and boiler. This sum was in fact all payable to the defendants if their interest in the two buildings and the engine and boiler amounted to that sum. It will be remembered that, though the plaintiff furnished the engine and boiler, the lease, which was executed by both parties under seal, provided for a lien in favor of the defendants upon the boiler and engine for all unpaid rent, so that the defendants might, in fact, have a large interest by way of lien upon that part of the machinery. It appears by the evidence that at the time of this fire there was nearly $1,900 of unpaid rent. Under the lien provision of the lease this sum seems to have been a lien upon the engine and boiler, and, had they been destroyed, the defendants would have been protected to that amount in addition to the protection afforded by the insur-

ance on the buildings. Certain it is that at the time of this fire there was $7,500 in gross of insurance upon the defendants' two buildings and upon the engine and boiler, which was payable to the defendants as their interest might appear, and this, we think, satisfies the agreement to insure contained in the lease. The result is that the defendants had no valid claim for any of the insurance moneys save the amount for which the building was insured, namely, $3,333.26, and the judgment must be affirmed.

*By the Court.*— Judgment affirmed.