Argued March 18, reversed and decree entered April 19, rehearing
denied May 17, 1921.

# SOUTHERN OREGON CO. *v.* GAGE, Sheriff.

### (197 Pac. 276.)

**Deposits in Court—Money Paid into Court Pending Litigation not a
"County Fund" Within Statute Requiring Depositaries of County
Funds to Pay Interest Thereon.**

1. Money deposited into the Circuit Court pending litigation and
deposited by county treasurer in a bank constituting a county deposi-
tary *held* not a "county fund" within Laws of 1913, page 515, re-
quiring depositaries for county funds to pay interest thereon in view
of Section 5.

**Payment — Payment of Interest Held Voluntary, and not Under
Duress.**

2. Bank in which county treasurer had deposited funds could not
recover interest paid on money deposited by county treasurer, but
which was not a county fund under Laws of 1913, page 515, requiring
depositaries for county funds to pay interest thereon, though payment
was made on treasurer's threat to withdraw deposits from such bank
on the bank's refusal to pay interest; such payment of interest having
been voluntary, and not under duress.

**Depositaries—Interest on Fund Loaned by Private Depositary Belongs
to Principal.**

3. If a private depositary loans the money of its principal and
acquires interest on it, the interest belongs to the owner of the fund.

**Deposits in Court—Interest on Money Paid into Court Pending Liti-
gation Paid by County Depositary Belongs to Owner of Fund, and
not County.**

4. Where depositary of county funds paid interest on money
deposited into Circuit Court pending litigation, the owner of the
fund, and not the county, was entitled to such interest.

From Coos: George F. Skipworth, Judge.

Department 1.

At the time of the transactions from which this
litigation resulted, the defendant Gage was sheriff
of Coos County, Oregon. His successor was substi-
tuted as a defendant, but the case will be treated
under the original name. In brief, there was litiga-
tion between the plaintiff and the tax collector of

---

4. Right to interest on deposit of money in court, see note in **Ann.
Cas.** 1912B, 1005.

Coos County, relating to the collection of taxes alleged to be due on real property claimed to be owned by the Southern Oregon Company. Without going into the details of the title to the land, it is sufficient to say that pending that litigation the Southern Oregon Company, equipped with money furnished to it by the Menasha Woodenware Company, deposited in the Circuit Court the following sums, at the dates here named: August 29, 1912, $75,000; March 15, 1913, $24,752.62; March 31, 1914, $38,863.26; March 27, 1915, $18,309.07; total, $156,924.95. Of these amounts, the first and fourth, aggregating $93,309.07, were afterwards deposited with the First National Bank of Coos Bay; and the second and third, amounting to $63,615.88, with the Flanagan & Bennett Bank. Meanwhile there was enacted by the legislative assembly the statute of February 27, 1913 (Laws 1913, Chap. 273, p. 515), entitled:

"An act to secure to the several counties of the State of Oregon, interest on county money, to provide for depositaries for county funds, and defining the duties of the county treasurer thereto, describing the security to be given and providing for the approval thereof, providing for the payment of funds held in trust by other public officers to the state and providing penalties for the violation of this act."

Conceiving that these moneys which had been paid into court *pendente lite* came within the operation of that act, the county treasurer of Coos County, having deposited the amounts stated with the First National Bank of Coos Bay, afterwards demanded of that bank that it pay interest on the same to the county at the rate of 2 per cent per annum. The representative of the bank protested against that demand, pointing out that such funds were not county money and were not subject to the payment of interest. There is tes-

timony to the effect that the treasurer was insistent in his demand for interest and threatened that in default of payment thereof he would withdraw the fund from the bank and would institute legal proceedings to compel the payment of accrued interest. The First National Bank, however, paid to the county treasurer interest at 2 per cent per annum from time to time until December 31, 1915, when it totaled $3,792.83, and then refused to pay any further interest on those deposits. It appears that each of the banks was a qualified depositary under the statute mentioned.

The result of the main litigation was that the original deposits were returned to the Menasha Woodenware Company, which had actually furnished the money and which took an assignment of its claim from the Southern Oregon Company. The matter of the interest was reserved by the court for further consideration, and after hearing the parties an order was entered returning to the First National Bank the money it had paid as interest. From this order the Menasha Woodenware Company appealed.

REVERSED. DECREE ENTERED.

For appellant there was a brief over the names of *Mr. John G. Mullen* and *Messrs. Dolph, Mallory, Simon & Gearin,* with oral arguments by *Mr. Mullen* and *Mr. John M. Gearin.*

For respondent, First Nat. Bank of Coos Bay, there was a brief and an oral argument by *Mr. W. U. Douglas.*

For respondent, Southern Oregon Company, there was a brief prepared and submitted by *Mr. Hall S. Lusk.*

For respondents, Coos County, Alfred Johnson, Jr., Sheriff, substituted for W. W. Gage, Sheriff, L. W. Oddy, County Clerk, and T. M. Dimmick, County Treasurer, there was a brief submitted by *Mr. John F. Hall.*

BURNETT, C. J.—Both parties agree that formal pleadings in such a matter are unnecessary, citing 18 C. J. 799, § 56. It would seem that since the fund is in possession of the court, and the principles upon which it was agreed to be disposed of were settled by the litigation in which it was deposited, the mere distribution of the fund is settled summarily as a matter of procedure, so that it is not necessary to formulate ancillary issues with the same strictness as in an original suit.

1. It is plain that the money deposited was not a county fund. The act in question provides for the designation of county depositaries, requiring security for the protection of the county, and says that the county treasurer shall deposit and at all times keep on deposit in the county depositaries all money of the county coming into his hands; that it shall be subject to the treasurer's check; and that interest thereon shall be paid on the daily average deposits of county money, to be calculated at the rate of two per cent per annum at the end of each month. Section 5 reads in part as follows:

"It shall be the duty of all public officers excepting clerks of school districts, having and holding in their possession or custody, public funds or money in trust for any person, by virtue of their office, or any money held *in custodia legis*, to, as soon as practicable, pay the same over to the county treasurer, if the same be held by a county officer, or to the state treasurer, if the same be held by a state officer. * * All moneys

so paid over to the county treasurer, as aforesaid, or to the state treasurer, as the case may be, shall be paid out by the state treasurer, or by the county treasurer, as the case may be, in accordance with the order of the court if said money is held *in custodia legis,* or to the persons to whom said money properly belongs, if otherwise held.''

As the fund in question was not county money, there was no right on the part of the treasurer to exact interest thereon, and no cause of action existed in behalf of the treasurer or of the county to compel the bank to pay such interest. On the other hand, the record shows that the bank had knowledge of all the facts in the case, and its counsel, who part of the time acted as manager of the bank, argued with the treasurer that the funds in question were not subject to interest. It is claimed, however, that the threat to sue for the interest amounted to coercion of the bank, so that, having paid the same under such duress, the bank is entitled to recover it from the county, as there is no dispute that the county treasurer turned the interest collected into the county fund and applied it to the payment of warrants drawn against the county funds.

What constitutes sufficient duress to authorize the recovery of money paid under its influence is a difficult question. The issue is affected by the disposition and capacities of the parties. Many instances are cited where a mere threat to sue somebody who was of weak mind and easily influenced constituted such duress. The principle is thus stated in *Lehigh Coal & Nav. Co.* v. *Brown,* 100 Pa. St. 338:

''It may be said in general that there must be some actual or threatened exercise of power * * possessed by the party exacting or receiving the payment, from

which the latter has no other means of immediate relief.''

In *Lipman, Wolfe & Co.* v. *Phoenix Assur. Co.*, 258 Fed. 544 (169 C. C. A. 484), cited by counsel for the bank, it is said:

''One cannot recover money voluntarily paid with a full knowledge of all the facts, although no obligation to pay existed, but money may be recovered where paid under circumstances of fraud, misrepresentation, and threats amounting to a duress which prevents the free exercise of the will, or where it is paid on a wrongful demand, to save the party paying from some great or irreparable mischief or damage from which he could not otherwise be saved, and while money paid under apprehension, or induced by threats of suits or actions, is not in general paid under such duress as to make the payment compulsory, such threats may, in connection with other circumstances, such as the inexperience of the person threatened, or the peril to which his business is exposed, if the threats are carried out, constitute such duress that money paid under the influence thereof may be recovered as for money had and received''— citing authorities.

In that case the plaintiffs claimed to have suffered a fire loss, and collected on the defendant's insurance policy upwards of $5,000. The immediate managers of the firm were young men and inexperienced, and their anxiety to protect the good name of the concern which had been founded by their father and another who was absent from the state, was alleged to have paralyzed their business judgment, so that they were incapable of withstanding the compulsion exercised upon them by the defendant and a committee of underwriters, and under such circumstances they returned the money collected on the policy. It was stated that a certain committee representing the

defendant and some forty other insurance companies threatened to publish charges against the firm that it had acquired the money fraudulently, without any real or actual injury to the property insured, and, with a design to injure the financial credit of the plaintiffs, canceled $100,000 of insurance which the latter had effected on their stock of goods. The District Court sustained a demurrer to the complaint, but the Circuit Court of Appeals reversed it and remanded the cause for a new trial. Some of the precedents cited are as follows: *Carew* v. *Rutherford,* 106 Mass. 1 (80 Am. Rep. 287), was a case where the plaintiff, a contractor for stonework, had in his employ certain skilled stonecutters, who became offended because he had sent a part of the work to New York for execution, and demanded of him that he pay into their union $500, in default of which they would strike and endeavor to prevent his getting anybody to take their places. They did strike on his refusal to pay, but finally, under this compulsion and finding that he could not procure skilled labor to complete his contract, the plaintiff paid the money. Afterwards, he was permitted to recover it, because it was paid under compulsion of threats to bring upon him great financial embarrassment. In *Guetskow Bros. Co.* v. *Breese,* 96 Wis. 591 (72 N. W. 45, 65 Am. St. Rep. 83), the plaintiffs could not collect some insurance due them unless the defendants joined in proof of loss and indorsed the draft given in payment. The latter refused to do this unless the plaintiffs paid an unfounded claim of the defendants. The plaintiffs were in trying need of the funds with which to resume business, and faced the utter destruction of their business career unless they could obtain that money. Under these circumstances they paid the unjust claim

of the defendants, but afterwards recovered the
amount paid. Much the same principle is involved
in *Vyne* v. *Glenn,* 41 Mich. 112 (1 N. W. 997). A
settlement of accounts between the parties was ac-
quiesced in by the plaintiff under threats of the
defendant to attach his property under circumstances
which would spell his financial ruin. The settlement
was set aside because it was induced by this duress.
*Baldwin* v. *Hutchinson,* 8 Ind. App. 454 (35 N. E.
711), was a case where the plaintiff was weak minded,
illiterate, and easily influenced, while the defendant
was a shrewd business man and forceful in his trans-
action of business affairs. The plaintiff, summoned
as a witness in some litigation, was interrogated as
to the reputation of defendant's son for truth and
veracity and answered that it was bad and that he
had been accused of stealing a sheep. This angered
the defendant, who afterwards threatened to prose-
cute the plaintiff for perjury unless he paid the de-
fendant a sum of money. The money was paid, and
the plaintiff was successful in an action to get it
back. *Brown* v. *Worthington,* 162 Mo. App. 508 (142
S. W. 1082), was a case in which the plaintiff had
contracted to buy a lot of hogs from the defendant
at a certain price. On the faith of this the plaintiff
had contracted to sell some of the hogs to a third
party for future delivery. Knowing this, the de-
fendant refused to comply with his contract or deliver
the hogs, unless the plaintiff would pay an additional
price. Confronted with this threatened inability to
meet his own contract, the plaintiff paid the unjust
exaction, but recovered it because he had paid it
under duress.

2. These cases possess one of two elements. One
is, that the one paying the money was weak minded,

subject to undue influence, illiterate and otherwise helpless as against the overbearing conduct of his adversary. The other is, that the one who demanded the money took advantage of the financial necessities of the other, where a refusal to pay the money would bring about financial ruin and destruction of the business of the complainant. These characteristics are practically common to all such cases. They are absent in the instant case. For all that appears, the First National Bank of Coos Bay was a solid institution. The only coercion that can be devised out of the testimony is the mere threat to sue for the interest. The bank was well advised of all the facts in the case. Indeed, the record shows that at first the theory advanced by it was that the payment of the interest was voluntary and all it desired was to be saved harmless as to costs. It objected, indeed, to paying interest, and as we view the law, the fund was not subject to an interest charge; but as the money did not belong to the county, required by law to be deposited in the proportion that the capital and surplus of the bank bore to the total public funds, the treasurer would have the right to withdraw the money in question and deposit it wherever he chose. The testimony is clear and undisputed that the bank used the fund as part of its assets. It was largely to its advantage, under those circumstances, to pay 2 per cent for money which it might loan at 8 or 10 per cent rather than have the deposit withdrawn. It was simply the legitimate operation of supply and demand, and it seems clear, from a careful reading of the testimony, that there was nothing more than the threat to sue, without any of the accompaniments amounting to duress under the authorities cited. Indeed, we find the bank refusing to pay further

interest.   It is plain as a matter of fact that the
payment to the county treasurer of the interest men-
tioned was a voluntary payment which the bank can-
not recover.

3, 4. It is also sufficiently plain that the county
authorities held the fund without the right to exact
interest from anybody for its use.   As stated, it was
not county money, and the treasurer, acting for the
county, was in the position of a *quasi* trustee, whose
duty it was to hold the money as a mere depositary,
to be paid to the one rightfully entitled to the same,
at the end of the litigation.   Under this state of facts,
any increment of the fund so held belongs to the
owner of the fund.   It is manifest that, if a private
depositary loans the money of its principal and ac-
quires interest on it, that interest belongs to the
owner of the fund.   The principle is not different
when applied to the present juncture.   The money
derived from this interest went into the coffers of the
county and was expended, as the record shows, in
payment of claims against the county.   The county
had been reimbursed by the federal government for
the taxes on the land involved, with penalties and
interest.   The bank had had the use of the money
at the low rate of 2 per cent per annum, voluntarily
paid.   The increment of the fund ought in justice to
go to the owner of the fund.   The bank was re-
imbursed for its expenditure by its use of the money.
The county had no right to the use of the money,
and the interest collected should follow the source
of it.

Governed as the issue is, by the principles ap-
plicable to the ordinary action for money had and
received, the Circuit Court ought to have distributed
the interest in question to the Menasha Woodenware

100 Or.—28

Company. That concern argues that the court should decree that the bank pay interest from January 1, 1915, that being the date at which the bank refused to pay further interest. That contention is erroneous. The bank was under no obligation to pay interest, not having agreed to do so. The only principle upon which it is compelled to relinquish its claim to the money already paid is that it was a voluntary payment. But that principle cannot be pressed beyond actual payment.

The result is that the decree of the Circuit Court is reversed and one here rendered directing the payment to the Menasha Woodenware Company of the sum of $3,792.83, paid voluntarily by the First National Bank of Coos Bay to the county treasurer of Coos County. The Menasha Woodenware Company in its brief says it has settled with the Flanagan-Bennett Bank, which had the custody of the remainder of the deposits, and asks that no decree be taken against that institution, but only against the county treasurer for the interest actually paid by that bank. This amounts, according to the record, to $1,677.61, being the difference between $5,470.44, the total interest paid in, and $3,792.83, paid in by the First National Bank of Coos Bay. This balance of $1,677.61 will also be paid by the county to the Menasha Woodenware Company. No judgment against either of the banks can be allowed, for they were under no obligation, so far as the record shows, to pay any interest. The decree operates only upon the voluntary payments made by the banks; and the county, having this money as an increment unearned by it, but earned by the money of the Menasha Woodenware Company, should pay it to the latter as the earnings of its own money. The

decree of the Circuit Court is reversed and a decree will be here entered according to the principles announced herein.

REVERSED.    DECREE ENTERED.    REHEARING DENIED.

McBRIDE, BEAN and HARRIS, JJ., concur.