POTTER v WAYNE COUNTY

OPINION OF THE COURT

1. APPEAL AND ERROR—RECORD ON APPEAL.

The Court of Appeals cannot exercise its appellate function on issues not reached by the trial court, upon which the record is silent.

DISSENT BY LEVIN, J.

2. TRUSTS—OWNERSHIP—PROFITS.

*Any profit obtained by a fiduciary belongs to the trust estate without regard to whether an injury was done to the estate or the profit was gained rightfully.*

3. TRUSTS—TRUST FUNDS—INVESTMENT—INTEREST.

*A trustee is accountable for the interest received on invested trust funds even though he had no duty to make the funds productive.*

4. PARTIES—CLASS ACTION.

*A kind of claim expected to be asserted as a class action is one wherein the persons constituting the class are so numerous as to make it impractical to bring them all before the court, a party can fairly insure the adequate representation of all, and the right sought to be enforced presents common questions of law and of fact and a common relief is sought (GCR 1963, 208.1).*

5. COUNTIES—CLAIMS AGAINST COUNTIES—ACTIONS.

*A claim against a county in which the county's liability arises by operation of law, as where a county or one of its officers has improperly obtained, exacted, or withheld money and the liabil-*

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*

[2, 3] 53 Am Jur, Trusts § 370 *et seq.*

[4] 59 Am Jur 2d, Parties § 47 *et seq.*

[5] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 680 *et seq.*

*ity to return the money arises under the principles of the common law, is left to common law remedies in courts having jurisdiction of common law actions and is not subject to a statutory provision requiring presentation of claims to the county board of supervisors or board of auditors before commencement of an action (MCLA 46.71).*

Appeal from Wayne, Thomas Roumell, J. Submitted Division 1 December 8, 1972, at Detroit. (Docket No. 11305.) Decided April 19, 1973.

Complaint by Ellen A. Potter and others similarly situated against Wayne County and Edgar M. Branigin, Clerk of Wayne County, for an accounting for interest earned on money held by the county pursuant to the orders of the circuit court. Summary judgment for defendants. Plaintiffs appeal. Reversed and remanded for further proceedings.

*Louis Wechsler* and *Saul Levin,* for plaintiffs.

*William L. Cahalan,* Prosecuting Attorney, and *Aloysius J. Suchy* and *Rheo C. Marchand,* Assistant Prosecuting Attorneys, for defendants.

Before: LESINSKI, C. J., and LEVIN and O'HARA,* JJ.

O'HARA, J. This is an appeal of right from the grant of a summary judgment. The claim asserted is in the nature of a class action on behalf of the named plaintiff and all others (if any) similarly situated.

The common fact situation said to support the class action is that funds deposited with the clerk of the court of the Third Judicial Circuit were invested in interest-bearing accounts or securities

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

and that the profit thereon was retained by the county rather than given to the "ultimate" owners of the funds. The common legal question is the claimed illegality of an order of the judges of the Third Circuit directing the investments and the payment of the interest into the general fund of Wayne County. The basis of relief seems to be, in general terms, that the questioned order is a revenue-raising measure which is beyond the judicial supervisory power of the judges over the administration of the courts of the county; a due-process question under the Fourteenth Amendment to the Federal Constitution, and though it is not specifically stated the complaint appears to sound in a theory of unjust enrichment, or possible breach of a custodial trust. We examine the issues.

Logically, we must first examine the viability of the asserted class action.

It is simply impossible to do this at appellate judicial level. In all but rare instances appellate courts are courts of review upon a record made in the court below. In this case we cannot properly exercise our appellate function because this first ground was not reached by the trial judge. We quote from his opinion.

"In view of the contents of this opinion, the question of whether a class action being appropriate or whether this suit as such for all other persons, if any, similarly situated is not reached."

Patently, if there is no trial court holding and nothing but pleadings and briefs to aid us, it would be most ill-considered to speak to the issue decisionally.

We look now to the basis upon which the trial judge did pass, and upon which he founded his decision. Without lengthy excerpts from the opin-

ion, we think it fair to say that the trial court, quoting certain statutory authority, held that the asserted judicial remedy and the relief sought thereby was premature. In effect he said, "until you demonstrate to me that you have made a demand upon the governmental entity involved to furnish you an accounting of the funds said to have been illegally acquired, and demonstrate refusal to pay you what you claim is yours voluntarily the issue is not justiciable before me". The position of the trial judge is not without merit. Plaintiff-appellant's two first stated "Questions Involved" assert that she has the right to proceed immediately judically. This question is as difficult to pass upon at appellate level as the one immediately hereinbefore discussed. The record is totally inadequate. This will have to await disposition until we can discuss the Third Circuit order mentioned later herein. For as far as the record shows, there is no money "ultimately" belonging to the plaintiff that even got into an interest-bearing account or security and thus that the county was illegally (or legally) withholding from plaintiff or anyone else interest earned thereon. We eschew appellate speculation.

We turn now to the claimed constitutional infirmity of the Third Circuit's order. It was entered on April 21, 1965. Again we decline to elongate this opinion either by including the order verbatim or by liberal direct quotation therefrom. We will set out some background that gave rise to its entry and the essence of its legal effect.

For some time, how long we do not know, monies deposited in court in Wayne County were kept in three accounts entitled: *Register in Chancery Account; County Clerk Bond Account;* and *Clerk of the Circuit Court Account.*

By the order of the Third Circuit judges all of the accounts were consolidated into one designated *The Circuit Court Account, Edward N. Branigin, County Clerk.*[1]

Additionally, the order directed the clerk, *in his discretion,* to invest and reinvest $150,000 from the total of the consolidated account into interest-bearing certificates of deposit and United States Treasury Bills. The order further provided that:

"[a]ll income realized on account of the investment made by the County Clerk pursuant to the terms hereof shall, when realized, be turned over and deposited to the General Fund of the County of Wayne."

We are well aware of the administrative convenience of such an arrangement, but we must at least arch an appellate eyebrow at the scope of the order.

We find ourselves in an anomalous position as far as speaking directly to the claimed illegality of the order. This is because it is this very order that generated the funds that plaintiff and those said to be similarly circumstanced seek accounting for and payment from. As to amounts deposited for bond or bail a specific statute provides that:

"cash or securities received by any * * * clerk * * * shall be deposited in a special fund, * * * . Any interest accumulating upon such fund shall be paid into the general fund * * * of the county." MCLA 765.17; MSA 28.904.

Except for this statute there is no obligation upon the county clerk to invest any custodial funds in interest-bearing securities or accounts. This is why we said earlier the asserted cause of action seems to rest upon the theory, at least in

---

[1] Now Joseph B. Sullivan.

part, of unjust enrichment. To put it simply, the situation would seem to be that the clerk, absent order of the judges, need not have invested any custodial funds in interest-bearing accounts or securities, but since he did (legally or illegally) plaintiff claims the county cannot enrich itself unjustly by retaining the interest earned.

Since we must vacate the summary judgment as to the first two issues discussed—*viz.,* the viability of the claimed class action, and the failure to make demand upon the county in the manner provided by statute, and the refusal pursuant thereto—we think it not amiss to add some comment, non-decisional, but mayhap very relevant.

We call the attention of the Third Circuit judges to a statute which may have been overlooked or not sufficiently distinguished as to its applicability to the matter under consideration.

"For any and all services relative to the receipt, safekeeping, putting out money, or purchasing, taking or transferring any security therefor, or collecting interest thereon, under the direction of the court, not herein specifically provided for, the clerk shall receive such allowance and compensation, and from such of the parties as the court may consider just and shall direct by an order, after notice to the parties to be charged therewith." MCLA 600.2529(8); MSA 27A.2529(8).

We note that retention of interest in some cases might well exceed or be far less than the court might consider "just". We think it not untoward that the Third Circuit bench reexamine promptly the order of 1965 which is under attack.

Gratuitously we add yet another comment. The class action so-called is a much needed tool to be employed in the interest of the individual litigant who by reason of his mini-size claim may be unable to retain counsel to press his cause. Per

contra, the class action, real or spurious, is not a device to be employed to create a bonanza when a simple, easily assertable, alternate remedy is available. We hardly need add that we intimate no evaluation in this regard of the case at bar.

If our opinion herein, like some of the teachings of Socrates, asks more questions than it answers, we ascribe it to the nature of the problem posed, the order giving rise to the litigation, the conflicting statutes involved, and the absence of a reviewable record.

For the reasons herein discussed, we vacate the summary judgment and remand for further proceedings. No costs, neither party having decisively prevailed.

LESINSKI, C. J., concurred.

LEVIN, J. *(dissenting).* The question presented is not complex.

The question is whether plaintiff Ellen A. Potter is entitled to maintain a class action against the defendant County of Wayne to recover interest paid by a bank on deposits by the Wayne County Clerk of funds held by the clerk as escrow agent for the plaintiff and other members of the class she seeks to represent.

I would reverse the judgment entered by the circuit court dismissing the complaint and remand for a determination of the amounts to which Mrs. Potter and other members of the class are severally entitled.

On April 21, 1965, the then presiding judge of the Wayne County Circuit Court entered an order "in the matter of the deposit and investment of moneys held by the County Clerk for the Wayne Circuit Court". The order recites the adoption on

April 19, 1965 of a resolution by the judges of that court determining that "income should be derived from a portion of the funds from time to time in the custody of the Circuit Court which funds are now on deposit in Detroit banks" in three separate accounts, "and such income when realized should be turned over and deposited in the 'General Fund for Wayne County' ".

The order directed that the funds be consolidated in one account to be carried in one Detroit bank, that $150,000 of the funds on deposit be invested in certificates of deposit issued by that bank or in United States Treasury Bills, and that all income be turned over to the general fund of the county.[1]

Sums in excess of $7,000 a year have been realized by the county on the funds held and so invested pursuant to the order of the court.

A few months after the order of April 21, 1965 was entered, a certified check for $17,241.45 was delivered to the county clerk pursuant to an order of the circuit court dated July 22, 1965 entered in an action commenced by plaintiff Potter against an insurance company and another defendant. The clerk deposited the check. Some three years later, on March 27, 1968, the $17,241.45 deposited was ordered separated and segregated and the clerk was directed to deposit that amount in an interest-bearing account at the prevailing rate of interest. The dispute over the entitlement to the $17,241.45 was settled and, on September 9, 1968, an order was entered by the court directing that $3,000 be paid to one contender and the balance, including all accrued interest, to Mrs. Potter's attorneys for her.

[1] It appears that the aggregate amount on deposit with the clerk at any one time will generally exceed $250,000.

I

Mrs. Potter commenced this class action on December 16, 1968. Her complaint alleges, and the defendant admits in its answer, that the county clerk "is acting in a fiduciary capacity as a stakeholder and trustee in respect to funds deposited with him", but, says the county, the interest earned must be turned over to the county because the general order of April 21, 1965 so provides and the order of July 22, 1965 provides that the clerk shall "hold" the $17,241.45 certified check deposited with him "until the further order of this court". As previously mentioned, the clerk deposited this check.

No question is or could properly be raised concerning the power of the circuit court to direct the deposit of funds in its custody in interest-bearing accounts and securities. See MCLA 600.573; MSA 27A.573, which provides:

"All funds, stocks, or securities deposited with the court for or by any person and received by the court clerk shall be deposited in a bank or otherwise safeguarded in the manner directed by the court."

It is, however, a separate question whether the interest earned belongs to the owners of the funds or the county.

The controlling principle is elucidated in *Brown v Vidro,* 260 Mich 54, 55–56 (1932). To facilitate the closing of estates of deceased persons, a statute provides that monies belonging to persons whose whereabouts cannot be ascertained shall be deposited with the county treasurer who shall maintain the monies in a separate fund.[2] The Michigan

---

[2] 1929 CL 15759, *et seq.* This statutory provision has been carried forward as 1948 CL 704.55; MSA 27.3178 (306), with substantive amendments, including an express provision now authorizing the

Supreme Court ruled that Brown, the administrator of a decedent's estate, was entitled, as against the county treasurer, to interest received by the treasurer from a bank[3] on funds so deposited by Brown with him. In so holding, the Supreme Court expressed its agreement with the following statement of the circuit judge in that case:

"The funds being private and not public, the county treasurer, by force of the exigencies of the situation, is made its custodian. He is, in fact, the trustee of such funds and must account to the beneficiary thereof, not only for the corpus of such funds, but for all increment thereto by way of interest less the statutory compensation provided for his service."[4]

The Supreme Court added that "the county treasurer can no more withhold interest actually earned upon the fund than could an executor or administrator".[5]

treasurer to deposit at interest money received by him pursuant to this statutory provision.

[3] The opinion of the Court says the treasurer received the interest "upon deposit" of the funds entrusted to him. The record on appeal shows that the funds had been deposited with a bank which paid interest to the treasurer.

[4] Similarly, *see Retan v Union Trust Co,* 134 Mich 1, 7 (1903), holding that funds deposited in escrow with the register of chancery pending the outcome of litigation, and by the register deposited with a bank, continue to belong to the individuals involved, and were not public funds in the ordinary sense of the term, and upon insolvency of the bank the individuals entitled to the funds are general creditors of the bank.

[5] The Supreme Court's ruling in *Brown* is in accord with holdings of other courts. *See Southern Oregon Co v Gage,* 100 Or 424; 197 P 276 (1921); *Hansen v Smith,* 395 P2d 944 (Wyo, 1964); *McMillan v Robeson County,* 262 NC 413; 137 SE2d 105 (1964). *See, also,* 23 Am Jur 2d, Deposits in Court, § 9, p 742, where the following appears:

"Generally, the mere deposit of moneys in court does not give rise to the right to receive interest thereon. However, where the custodian of the funds is authorized or required to deposit the funds in a bank or other interest-paying depository, it has been held that the person ultimately determined to be entitled to the funds is also entitled to the interest that has accumulated thereon." (Footnotes omitted.)

It is settled law that any profit obtained by a fiduciary belongs to the trust estate without regard to whether an injury was done to the estate or the profit was gained rightfully.[6] As expressed in the restatement:

"The trustee is accountable for any profit made by him through or arising out of the administration of the trust, although the profit does not result from a breach of trust." Restatement Trusts, 2d, § 203, p 455.

In his treatise on the law of trusts, Professor Scott wrote, "where a trustee deposits trust funds in a bank and receives interest on the deposit, he is accountable for the interest received even though he was not under a duty to make the money productive". 3 Scott on Trusts, § 203, pp 1659–1660.

It is, accordingly, of no importance whether the clerk of the court was or was not obliged to invest the $17,241.45 deposited with him on July 22, 1965 before the order of March 27, 1968 was entered requiring the separation, segregation, and investment of that sum. Without regard to whether he had an obligation to do so, he did in fact commingle that sum with other funds in his possession and a sizable proportion of the commingled funds were invested and interest was earned, which the county received. As expressed by the United States Supreme Court, "[i]t makes no difference that the estate was not a loser in the transaction * * * [, that] no wrong was intended, and none was in fact done to the estate". *Magruder v Drury,* 235 US 106, 120; 35 S Ct 77, 82; 59 L Ed 151, 156 (1914).

## II

This is the kind of claim one would expect to be

---

[6] *See* Loring, A Trustee's Handbook (Farr Rev), § 57, p 152; 54 Am Jur, Trusts, § 314, p 249.

asserted as a class action. The persons constituting the class are so numerous as to make it impracticable to bring them all before the court. Ellen Potter can fairly insure the adequate representation of all, and the right sought to be enforced presents common questions of law and of fact and a common relief is sought. See GCR 1963, 208.1; *Pressley v Wayne County Sheriff,* 30 Mich App 300, 317 (1971). The Michigan Supreme Court recently observed:

"It is in the very nature of a class action that the claim of each individual member of the class may be such as to alone scarcely warrant pursuit of repayment. If an action is successful, the fruits of the action should not be denied to the class unless the reasons for denial are most cogent. We do not perceive here such difficulties as would merit denying recovery. This situation was one peculiarly adapted to a class suit. The claim of each member of the class alone did not warrant an action, all members were affected in like manner by the action of defendant, and the issue was one that demanded legal clarification." *Bond v Ann Arbor School Dist,* 383 Mich 693, 702–703 (1970).

It does appear that monies other than escrow deposits of the kind in which Ellen Potter claimed an interest may have been commingled as a part of the funds invested by the county clerk. The trial court should be required on remand to determine with greater precision than is possible on this record the persons constituting the class of which Ellen Potter is a member and could properly confine the relief granted in this action to persons who are members of the class as so determined.

### III

This is not a "claim" required to be presented to

the Board of Auditors of Wayne County before the commencement of an action.

The Constitutions of 1850 and 1908 contained provisions concerning the presentation of claims against a county. The subject was also covered by statute. See 1889 PA 63, § 5;[7] 1909 PA 58, § 1.[8] Since the adoption of the 1963 Constitution[9] the subject is regulated solely by statute.

The 1908 Constitution[10] provided that the county board of supervisors, or county auditors in counties having auditors, "shall adjust all claims" against the county and provided that appeals from their decisions could be taken to the circuit court. The presently operative statute, 1909 PA 58, implements that language of the 1908 Constitution.

The provision in the 1908 Constitution permitting appeals was a revision of the original language in the 1850 Constitution, which had provided that the board of supervisors or, in certain designated counties having a board of county auditors, the auditors shall have the "exclusive power"

---

[7] MCLA 47.55; MSA 5.605. *See* fn 12.

[8] MCLA 46.71; MSA 5.521.

[9] The 1963 constitutional provision reads:

"Boards of supervisors shall have exclusive power to fix the compensation of county officers not otherwise provided by law." Const 1963, art 7, § 9.

The convention comment accompanying this section states that a sentence in the 1908 Constitution "fixing responsibility for adjusting claims against the county is eliminated as unnecessary because there is no doubt under existing statutes that the responsibility lies with the board of supervisors".

[10] "The boards of supervisors shall have exclusive power to fix the salaries and compensation of all county officials not otherwise provided for by law. The boards of supervisors, or in counties having county auditors, such auditors, shall adjust all claims against their respective counties; appeals may be taken from such decisions of the boards of supervisors or auditors to the circuit court in such manner as shall be prescribed by law." Const 1908, art 8, § 9.

to "adjust all claims" against the county, and "the sums so fixed and defined shall be subject to no appeal".[11]

The 1909 act provides that it shall be the "duty" of the board of supervisors or the board of county auditors in counties having such a board—as does Wayne County—"to adjust, allow and authorize the payment of all claims against the particular county, and any claims not [so] adjusted and ordered paid * * * shall not be paid". MCLA 46.71; MSA 5.521.[12]

Before the adoption of the 1908 Constitution— and, thus, at a time when the prerogative of the supervisors and auditors to adjust "all claims" was in terms "exclusive", and no appeal could be taken from their decision—the Michigan Supreme Court declared that "all claims" meant "some classes of claims". *Endriss v Chippewa County*, 43 Mich 317, 318 (1880).

In *Endriss* and later cases the Michigan Supreme Court held that these constitutional and

---

[11] "The board of supervisors, or in the counties of Saginaw, Jackson, Washtenaw, Kent, Wayne, Genesee, Bay, Cheboygan and St. Clair the board of county auditors, shall have the exclusive power to fix the compensation for all services rendered for and to adjust all claims against their respective counties, and the sums so fixed and defined shall be subject to no appeal." Const 1850, art 10, § 10.

As originally adopted, this section referred only to the Board of Auditors of Wayne County. By constitutional amendments *(see* 1903 PA, p 453; 1905 PA, p 548; 1907 PA, p 529) this section was amended to add additional counties as above set forth. *See* fn 12 concerning the 1889 act regarding the Board of County Auditors for Wayne County.

[12] Provision is made for appeal to the circuit court in § 2 of the act. MCLA 46.72; MSA 5.522.

The 1889 act (see footnote 7) concerns the Board of County Auditors for Wayne County. This enactment, before the adoption of the 1908 Constitution, provides that the board shall "adjust all claims against said county, and the sum so fixed and defined shall be subject to no appeal". MCLA 47.55; MSA 5.605.

In other counties, a board of county auditors may be created by local option; the claims procedure, and exceptions, are spelled out in some detail. *See* 1913 PA 275; MCLA 47.8; MSA 5.558.

statutory provisions were not meant to require
presentation of claim before commencement of an
action where the county's liability arises by opera-
tion of law, as where a county or one of its officers
has improperly obtained, exacted, or withheld
money and the liability to return the money arises
under the principles of the common law.

In *Endriss* the action was against a county for
money paid under protest which was asserted to
have been illegally collected by one of the officers
of the county; the nature of the claim of illegality
was not stated in the complaint which had been
dismissed by the circuit judge. In holding that
such an action could be maintained without first
presenting a claim to the county, Mr. Justice
COOLEY, speaking for a unanimous Court, declared
(pp 319–321):

"*This suit is grounded in common law principles,* and
there is no statute which provides for or embraces it.
The case made is one in which the county has illegally
exacted money from the plaintiff, and refuses to restore
it. Can the board of supervisors under the Constitution
take from the plaintiff this money, and deprive him of
all remedy therefor, by simply refusing to audit his
claim? *He has not performed services for the county,
and thereby submitted himself to the jurisdiction of the
board; he has not contracted with the county; he has
merely, according to his allegations, had the misfortune
to have an illegal claim presented against him by the
county.* He has submitted to the illegal claim under
protest, and the question now is, whether in respect to
obtaining redress he is remitted exclusively to the
county itself, represented in his *[its]* official board.

"We find nothing to sanction this claim in the meagre
reports of debates in the constitutional convention. The
section is spoken of as one to confer upon the supervi-
sors exclusive authority to fix the salaries of county
officers and to pass upon claims for services rendered to
counties. The section as first introduced related to

salaries only (Constitutional Debates, 339); and it was made more general so as to cover other services performed for counties and also those of town officers and other persons when under the law they constitute a proper liability against the counties. Id. 345. No speaker intimated that the provision was broad enough to cover a case like the present.

"Under the law in force when the Constitution was adopted, any person whose "claim" against a county was disallowed by the board of supervisors, in whole or in part, might appeal therefrom to the circuit court. Rev St 1846, p 68. In another section the claim of the appellant is spoken of as an "account" (ibid., p 69); and it is very clear that the statute did not intend to give the supervisors jurisdiction of all possible claims; for in another chapter actions against counties were expressly provided for (ibid. pp 529, 530). And *it was never understood that the courts were ousted of their jurisdiction of common law actions.* The boards of supervisors fixed the salaries of county officers and passed upon the accounts of justices and constables in criminal cases, of accounts against their respective counties under the laws for the support of the poor and those for the protection of the public health, subject in all cases to an appeal to the circuit court; but *actions arising at the common law were left to common law remedies.* The purpose of the section of the Constitution now under discussion was to take away the right of appeal, but *not to deprive the courts of the original jurisdiction before existing.* See *McMahon v Auditors of Wayne County,* 41 Mich 223 [1879]." (Emphasis supplied.)

*Endriss* was followed by *Webster v Wheeler,* 119 Mich 601, 603–604 (1899), where, again, the claim did not arise contractually but by operation of law. The Supreme Court ordered repayment by a county treasurer to the collector of a city of monies erroneously paid by the collector to the treasurer, saying:

"This is not a claim against the county, or against money belonging to the county. The county treasurer

has money, received in an official capacity, it is true, but it is money to which he has no right, as against the relator; and we think *mandamus* a proper remedy to compel its restitution."

In *Board of Supervisors of Arenac County v Board of Supervisors of Iosco County,* 144 Mich 52, 54 (1906), the principle elucidated in *Endriss* and *Webster* concerning claims arising by operation of the common law was extended to cover at least some classes of obligations imposed on a county by act of the Legislature.[13] A statute imposed on local health authorities an obligation to make effective provision for victims of smallpox, and on a county to which an indigent victim of smallpox "belongs" the obligation to reimburse the health authority of the community which provided treatment for the cost of confinement and care. 1897 CL 4424. The Supreme Court held that an action could be commenced, without prior presentation of claim, in assumpsit on the common counts alleging a promise to pay in accordance with the obligation of reimbursement set forth in the statute:

"In the present case the plaintiff had no option in the matter, as the county was in the first instance liable to those who rendered services. *Rae v Mayor of Flint,* 51 Mich [526] 528 [1883]; *Elliott v Supervisors of Kalkaska County,* 58 Mich [452] 453 [1885]. The payment of these claims by the plaintiff was not therefore voluntary. It was not such a claim as the Constitution contemplates shall be committed to the board of defendant county for audit. *Endriss v Chippewa County,* 43 Mich [317] 320 [1880]; *Auditor General v Board of Supervisors of Bay County,* 106 Mich [662] 680 [1895]."

In *Graves v Bliss,* 235 Mich 364, 368 (1926), and

---

[13] Compare OAG, 1952–1954, No 1634, p 111 (February 10, 1953); OAG, 1956, No 2765, p 604 (October 15, 1956); and *Cowen v Macomb County,* 290 Mich 361, 364 (1939), discussed in fn 14.

*Moore v Harrison,* 224 Mich 512 (1923), the Su-
preme Court ruled that claims need not be pre-
sented where they were founded on acts of the
Legislature which required payment out of county
general funds of orders upon a drain fund which
had been exhausted. Although the plaintiffs in
these cases had voluntarily made the expenditures
for which they sought payment—they had fur-
nished labor and material for the construction of
the drains—presentment of claim was not required
because there was no "judgment" to be exercised
by the county in allowing or disallowing the
claims:

"No question of the auditing or allowing of private
claims is involved. The [statutory] provision for pay-
ment is followed by authority to the county treasurer to
reimburse the general fund from the taxes when re-
ceived. This can be accomplished by a simple process of
bookkeeping. He is not required to exercise any judg-
ment in the allowance or disallowance of claims in
doing so." *Moore v Harrison, supra,* p 521.

The most recent case is *Bitonti v Wayne County
Auditors,* 311 Mich 322, 326 (1945).[14] Gambling

---

[14] The only case I have found decided after the adoption of the 1908
Constitution (which eliminated the exclusivity provision of the 1850
Constitution) holding that a claim other than for services must be
presented before commencement of an action is *Cowen v Macomb
County, supra.* In that case it was sought to hold the county liable for
past-due drainage bonds. This statutory liability arose only if the
drainage fund was insufficient and if advancement of monies for this
purpose would not exceed the constitutional debt limit of the county.
The Supreme Court declared that the liability of the county was (i)
secondary (contrast *Graves v Bliss,* 235 Mich 364 [1926], and *Moore v
Harrison,* 224 Mich 512 [1923], which were, indeed, as the *Cowen*
Court pointed out, actions against a county treasurer, not against the
county directly), arising only if the drainage fund was insufficient,
and (ii) conditional, arising only if payment would not cause the
county to exceed its debt limit. "Such circumstances and conditions,"
said the Court, "require the presentation of the claim to the board of
supervisors."

In the instant case the liability of the county to Ellen Potter is
primary and unconditional.

*See, generally, McQuaid v Oakland County Board of County Audi-*

money was seized by officers without a search warrant, and placed in the custody of the court. A one-man grand jury (a circuit judge) turned the money over to the Treasurer of Wayne County. The plaintiffs petitioned the Wayne County Board of Auditors to return the money. The board refused a hearing on the ground that it lacked jurisdiction, but subsequently granted a hearing and refused to make a refund. The plaintiffs thereupon applied to the circuit court for a writ of mandamus directing the board of auditors to issue a warrant for payment. The writ was granted and the board of auditors appealed, arguing that this was a "claim" against the county and that the auditor's unappealed decision was res judicata. The Supreme Court held that the circuit court had never lost jurisdiction over the funds in question because no provision of law authorized their seizure.

The Court declared:

"That brings us to the question of how this money got into the county treasury. The record does not disclose any judicial action confiscating or condemning the moneys in the custody of the court, and we find no provision of law which authorizes money, so seized by officers without a search warrant and placed in the custody of the court without further action relative thereto, to be paid into the general funds of the county. Under this record the circuit court never lost jurisdiction over the funds in question nor, so far as we are informed by this record, was there any confiscation of the moneys as attributes of gambling or any indictment of the persons from whom the moneys were taken. Want of appeal from denial by the board of county auditors of the return of the moneys was not *res judicata* or decisive of any issue before the court.

tors, 315 Mich 234 (1946); *Moore v Ingham County,* 363 Mich 533 (1961); *Kominski v Wayne County Board of Auditors,* 287 Mich 62 (1938).

"The circuit court had full jurisdiction in the premises. It is idle for the board of auditors to contend that the identical moneys cannot be returned because they have been commingled with general county funds. Payment of money equivalent in amount will satisfy the obligation of the county."

Here, as in *Endriss, Webster,* and *Bitonti,* the money claimed by Ellen Potter and persons in the class she seeks to represent was improperly paid over to the county. The interest earned with Ellen Potter's money was paid to the county without her knowledge. She does not seek payment for services rendered or goods delivered. She entered into no contract with the county. She did not extend credit to the county. She could not properly be said to have voluntarily entered upon an undertaking resulting in the conferral of a benefit on the county for which recompense is being sought. She did not submit herself by a course of dealing with the county to adjustment or audit by the county auditors of the amount owing to her.

Her action arises by operation of law independently of statute. The county has no proper choice but to return the money which it received from the county clerk pursuant to the administrative order of the circuit court entered on April 21, 1965. That administrative order—entered without notice to Ellen Potter or, for all that appears, anyone else—was no more a judicial act than the payment to the county of the gambling money by the one-man grand juror in the *Bitonti* case. There was no "judicial action" confiscating the increment of interest earned with Ellen Potter's money. There is no provision of law—statutory or common —authorizing confiscation of the interest earned with her money. The circuit court which had her money and which erroneously caused it to be paid

over to the county "never lost jurisdiction over the funds in question". It has "full jurisdiction in the premises".

Ellen Potter and members of the class she seeks to represent are entitled to have restored to them the interest earned with the use of their money. The circuit court is fully capable of unraveling the accounting problems,[15] and it should be directed to proceed without delay to rectify the matter.

[15] See *McMillan v Robeson County,* 262 NC 413, 416; 137 SE2d 105, 108 (1964).