## McQUAID v. OAKLAND COUNTY BOARD OF COUNTY AUDITORS.

1. COUNTIES—SALARIES OF COUNTY OFFICERS—ACTION.

   A claim against a county for the unpaid salary of a lawful incumbent of a county office is a claim recoverable in an action at law.

2. SAME—WAIVER OF SALARY BY COUNTY OFFICER.

   A county officer's express agreement to waive his salary is not binding.

3. OFFICERS—COMPENSATION—STATUTES—CONTRACTS.

   Compensation to a public officer is a matter of statute, not of contract, and is incidental to office.

4. SAME—COMPENSATION—TERM OF OFFICE.

   Since compensation to a public officer is not a matter of contract it may not be fixed thereby either before or after the term commences.

5. CONTRACTS—WAIVER—PUBLIC POLICY.

   Waiver being contractual in its nature can be no more effective as a bar than an express agreement or contract, and cannot arise from a transaction in respect to a matter about which the express contract would be invalid as against public policy.

6. OFFICERS—SALARY—STATUTES.

   The salary of a public officer, when once fixed in the manner prescribed by law, can be changed only by a like compliance with the statutory conditions.

7. SAME—ACCEPTANCE OF LESS COMPENSATION—ESTOPPEL.

   A public officer's acceptance of less compensation than that established by law for the office does not estop the officer from subsequently claiming the legal compensation.

8. SAME—REDUCTION OF SALARY—DISCHARGE BY SUBTERFUGE.

   A public officer may not be discharged from office by the subterfuge of reducing his salary.

9. Counties—Boards of Supervisors—Boards of Auditors—Claims Against Counties.

County boards of supervisors or auditors cannot refuse to pay claims fixed by law and may be compelled, in a proper proceeding, to do so (Const. 1908, art. 8, § 9; 1 Comp. Laws 1929, § 1186 *et seq.;* § 1203 *et seq.;* § 1219 *et seq.,* as amended by Act No. 303, Pub. Acts 1931; § 1226 *et seq.*).

10. Same—Claims Against Counties—Constitutional Law—Board of Auditors.

Statute relating to audit and payment of claims against counties by boards of county auditors must be read in the light of the pertinent provision of the Constitution relating to adjustment of claims against counties and in such manner as to accord with the general legislative policy relating to the subject matter (Const. 1908, art. 8, § 9; 1 Comp. Laws 1929, § 1186 *et seq.;* § 1203 *et seq.;* § 1219 *et seq.,* as amended by Act No. 303, Pub. Acts 1931; § 1226 *et seq.*).

11. Same—Just Claim Against Counties—Construction of Statutes.

"Just claim" against a county, as term is used in statute authorizing a board of auditors to adjust claims, has no peculiar or fixed meaning but includes obligations of the county that are lawfully due and payable and to the payment of which the county has no legal defense, the question of liability and the extent thereof to be determined in each case on the basis of the facts and the law (1 Comp. Laws 1929, § 1203 *et seq.*).

12. Registers of Deeds—Unpaid Salary of Incumbent—War Service.

Register of deeds who was in active service in navy for upwards of two years during war, who requested that salary checks not be issued to him during such period, whose duties were apparently performed by his deputy and employees with such aid and assistance as plaintiff was able to give from time to time and who was responsible for the conduct of the office *held,* entitled to recover agreed amount of unpaid salary upon return from service after demand therefor (Const. 1908, art. 8, § 9; 1 Comp. Laws 1929, § 1203 *et seq.*).

Per Carr, Sharpe, Reid, North, and Starr, JJ.

13. Same—Compensation of Incumbent.

Since an incumbent register of deeds and his bondsmen were responsible for the faithful discharge of the duties of his

office and for the faithful performance of his duties by his deputy, the salary attaches to the office and is payable to incumbent (1 Comp. Laws 1929, §§ 1373, 1375).

Per Sharpe, Boyles, Reid, North, and Starr, JJ.

Butzel, C. J., and Bushnell, J., dissenting.

Appeal from Oakland; O'Hara (Chester P.), J., presiding. Submitted April 9, 1946. (Docket No. 92, Calendar No. 43,374.) Decided June 28, 1946.

Orrin McQuaid presented his claim against Oakland County to its Board of County Auditors for salary as register of deeds. Claim denied. Plaintiff appealed to circuit court. Claim allowed. Defendants appeal. Affirmed.

*Glenn C. Gillespie,* for plaintiff.

*Harry J. Merritt,* Corporation Counsel, for defendants.

Carr, J. Plaintiff has held the office of register of deeds for Oakland county since January 1, 1939, having been re-elected for each succeeding term. In March, 1942, he enlisted in the United States navy. On June 19th, following, he was assigned to active duty, continuing in the service until his final discharge on October 15, 1944. During this period the work of the office was carried on by plaintiff's deputy and employees. Plaintiff claims that he communicated with the deputy from time to time regarding office affairs, that he returned to Pontiac at intervals, and on each occasion gave as much time to the affairs of the office as was possible.

During the time that plaintiff was in active service in the navy he did not draw the salary fixed for the office pursuant to action of the board of

supervisors. At his request no checks were issued to him. On his discharge from service he undertook to arrive at a settlement with the board of county auditors for his salary during the period in question. No agreement was reached, however, and plaintiff, under date of December 20, 1944, filed a claim for salary from July 15, 1942, to October 15, 1944, in the aggregate sum of $8,637.50. Defendant board denied the claim, whereupon plaintiff appealed to the circuit court. Plaintiff there recovered judgment for the amount of his claim, together with interest from the date of demand for payment. It is conceded that the amount of the judgment was correct if plaintiff was entitled to recover at all.

Defendant board of auditors, in rejecting plaintiff's claim, relied on certain provisions of Act No. 275, Pub. Acts 1913 (1 Comp. Laws 1929, § 1203 et seq. [Stat. Ann. § 5.551 et seq.]). Section 9 of said act, so far as material here, reads as follows:

"The said board shall have power, and it is hereby expressly authorized and directed:

"First, To audit all claims which are chargeable against the said county, as in section 8 above provided, and to draw warrants therefor, duly signed by its chairman and countersigned by the clerk; but no warrant shall be drawn or issued by said board except for the amount of a just claim against said county, which has been duly allowed by said board.

Section 8, referred to in the provision above quoted, reads in part:

"No claim against any county adopting the provisions of this act, including all claims incurred by the county drain commissioner, shall be paid by the treasurer of said county until it shall have been duly audited and allowed by the board of

county auditors, and payment of an audited claim shall be made only upon a warrant duly signed by the chairman of said board, and countersigned by the clerk, excepting salaries fixed by' law or the board of supervisors of said county and jury and witness fees, primary school money and such other funds as may come into the hands of the county treasurer, which are created by and disbursed under special statutes relating thereto.''

Said Act No. 275 of 1913 is entitled:

''An act to authorize the boards of supervisors of counties to create a board of county auditors, appoint such officers, and prescribe their powers, duties and compensation.''

It is the position of the defendant board that, having been created pursuant to the provisions of this act, it is subject to the provisions thereof, including section 9, above quoted, and that it may not properly allow a claim unless such claim is, in the judgment of the board a ''just claim.'' In a communication to plaintiff advising him that his claim had been disallowed, the board said:

''You will notice that the word 'just' appears to be the yardstick by' which we, as a board, must be guided in auditing a claim for payment.''

This statement summarizes the position of the defendants in the trial court, and on appeal to this court. It is not denied that plaintiff's claim is a legal one, but it is insisted that it must meet the further test of being ''just'' within the meaning of ordinary definitions of that word.

Counsel for defendants contends in his brief that plaintiff had the choice of two remedies, either a mandamus proceeding to compel the payment of salary, based on plaintiff's legal rights, or the pres-

entation of his claim to the board of auditors for action thereon. It is argued that, having chosen the latter method of procedure, plaintiff thereby subjected his claim to the right of defendant board to reject it for the reason given as the basis for such action, namely, that it was not, in the opinion of the board, a just claim.

No question can be raised as to the legality of plaintiff's claim against the defendants. He was the lawful incumbent of the office during the period for which he seeks to recover the salary. There is nothing in the record to indicate that the duties pertaining to said office were not properly performed under the directions of plaintiff's deputy, with such aid and assistance as plaintiff was able to give from time to time. He was during the period in question responsible for the conduct of the office.

In rejecting the claim the defendant board asserted that plaintiff induced the board members to believe that no claim for salary would be made during the time that he was in active service in the navy. The record indicates, however, that plaintiff merely requested that no checks be drawn to him during that period. However, if he had expressly agreed to waive his salary, such waiver would not have been binding. In *Lee* v. *County of Macomb,* 288 Mich. 233, the plaintiff, the county commissioner of schools, signed a written waiver releasing his right to a portion of the salary previously fixed by the board of supervisors of the county. Later he filed a claim against the county, and appealed to the circuit court from the denial of the ·claim. In affirming a judgment in his favor this, court said (p. 237):

"Compensation to a public officer is a matter of statute, not of contract, and is incidental to office. It is not a matter to be fixed by contract, or that

can be so fixed, either before or after the term commences. *Nelson* v. *City of Superior,* 109 Wis. 618 (85 N. W. 412). Waiver being contractual in its nature can be no more effective as a bar than an express agreement or contract, and cannot arise from a transaction in respect to a matter about which the express contract would be invalid as against public policy. *Salley* v. *McCoy,* 182 S. C. 249, 281 (189 S. E. 196).

"The salary of an officer, when once fixed in the manner prescribed by law, can be changed only by a like compliance with the statutory conditions; and by accepting a smaller amount than that to which he is entitled, the officer does not waive his right to recover the full salary. *Ruell* v. *City of Alpena,* 108 Mich. 290. The acceptance of less compensation than that established by law for the office does not estop an officer from subsequently claiming the legal compensation. *Kaminski* v. *Wayne County Board of Auditors,* 287 Mich. 62. 'One of the reasons for the rule that an official's salary cannot be reduced during his definite term is to prevent the use of an indirect method to discharge an official during such term by the subterfuge of reducing his salary.' *Bodell* v. *City of Battle Creek,* 270 Mich. 445, 448. 'The wisdom of a provision prohibiting any change either by increase or reduction of a public officer's salary during his term has been universally recognized. Such provisions are common in constitutions and statutes of the various States, and the courts have been firm in restraining attempts to evade them. This court has been in line with the general rule when deciding cases where phases of the question have arisen.' *Barrus* v. *Engel,* 186 Mich. 540, 544.

"No principle of waiver or estoppel precludes plaintiff from recovering the balance of the full amount of his fixed salary for the term of office. The salary which is fixed by statute cannot be

changed by agreement either before or after the term commences."

In determining the proper interpretation of the provision of the statute on which defendants rely, the language of article 8, § 9, of the State Constitution (1908) is significant. Said section provides:

"The boards of supervisors, or in counties having county auditors, such auditors, shall adjust all claims against their respective counties; appeals may be taken from such decisions of the boards of supervisors or auditors to the circuit court in such manner as shall be prescribed by law."

It will be noted that the mandate thus given is not limited to the auditing and adjustment of such claims as the boards referred to may consider just. It is also significant that Act No. 58, Pub. Acts 1909, entitled: "An act relative to the adjustment and payment of claims against counties, and to provide appeals from the disallowance thereof" (1 Comp. Laws 1929, § 1186 *et seq.* [Stat. Ann. § 5.521 *et seq.*]), follows, in section 1 thereof, the language of the Constitution. Said section reads:

"It shall be the duty of the board of supervisors of each county, or the board of county auditors in counties having a board of county auditors, to adjust, allow and authorize the payment of all claims against the particular county, and any claims not adjusted and ordered paid by the said board of supervisors or board of county auditors, as the case may be, except as provided in this act, shall not be paid. Any claim or any part or portion thereof which may be adjusted or allowed by the board of supervisors or the board of county auditors shall be paid out of the county treasury in the manner provided by general law."

Similarly, Act No. 301, Pub. Acts 1923 (1 Comp. Laws 1929, § 1219 *et seq.*, as amended by Act No. 303, Pub. Acts 1931 [Comp. Laws Supp. 1940, § 1219 *et seq.*, Stat. Ann. § 5.571 *et seq.*]), in section 3, makes it the duty of the committee, created under said act, to "audit all claims which are chargeable against the county." Similar language is found in Act No. 63, Pub. Acts 1889 (1 Comp. Laws 1929, § 1226 *et seq.* [Stat. Ann. § 5.601 *et seq.*]), relating to the powers and duties of the board of auditors for Wayne county. It is settled by prior decisions of this Court construing such provisions that county boards cannot refuse to pay claims fixed by law, and that they may be compelled, in a proper proceeding, to do so. *People, ex rel. Bristow,* v. *Macomb County Supervisors,* 3 Mich. 475; *People, ex rel. Schmittdeil,* v. *Wayne County Auditors,* 13 Mich. 233. Other decisions are of like import. See, also, *Gillespie* v. *Oakland County Auditors,* 267 Mich. 483; *Holland* v. *Adams,* 269 Mich. 371; *Atlas* v. *Wayne County Board of Auditors,* 281 Mich. 596.

We do not think that it was the intention of the legislature in the enactment of Act No. 275, Pub. Acts 1913, to subject boards of county auditors functioning thereunder to any other or different rule than is contemplated by the constitutional provision above quoted and by the other legislative enactments referred to. The provisions of Act No. 275 must be read in the light of the constitutional mandate and in such manner as to accord with the general legislative policy relating to the subject matter. If by the act specifically in question here an attempt was made to prescribe a rule or "yardstick," not contemplated by the Constitution, such attempt must be regarded as ineffective. However,

under established principles of statutory construction, the language of the act must be construed, if possible, so as to obviate any conflict. It is apparent that the legislature intended to provide for the allowance of lawful claims against counties subject to the act, and for the payment of such claims in the manner prescribed. The expression "just claims" has no peculiar or fixed meaning. It must, we think, be regarded as including obligations of the county that are lawfully due and payable and to the payment of which the county has no legal defense. The question of liability and the extent thereof must be determined in each case on the basis of the facts and the law.

The recent decision of the supreme court of Iowa in *Wisdom* v. *Board of Supervisors of Polk County,* 236 Iowa, 669 (19 N. W. [2d] 602), is in point. The statute there before the court imposed liability on counties for injuries to sheep, caused by dogs or wolves. With reference to the allowance of claims (Code of 1939, chap. 277, § 5454) it was provided:

"The board shall act on such claims within a reasonable time and allow such part thereof as it may deem just."

In answering the argument that the board was authorized to exercise a "sound judicial discretion" in passing upon each claim it was said:

"We are of the opinion that the statute, section 5454, is no grant of arbitrary power to the board. The command to the board is that it 'shall act' and 'shall allow' such part of the claim as it may 'deem just.' The word 'just' means reasonable, correct, true, due. (Webster's New International Dictionary.) This fund is primarily created as a fund to

which claimants for injuries to domestic animals are to resort. In passing upon claims, the board's inquiry should ordinarily be directed to the following: (1) Was the claimant the owner of the domestic animals killed or injured? (2) Were they injured or killed by wolves or by dogs, not owned by claimant, within 10 days from the date of the filing of the claim (or the date the owner or his agent had knowledge of such injury or killing?) (3) What was the extent of the damage based upon the value of the animals injured or killed?"

A like conclusion was reached in *Culley* v. *Hardenbergh,* 1 Denio (N. Y.), 508. There the court had occasion to interpret a contract in which provision was made for "just and reasonable compensation." In construing such provision it was said:

"I am of opinion that the words in the agreement '*a just and reasonable* compensation for the services rendered' by the solicitors, mean neither more nor less than the fees or compensation *allowed·by law* for the services."

See, also, *Peck* v. *Botsford,* 7 Conn. 172 (18 Am. Dec. 92); *Ludlow* v. *Ramsey,* 11 Wall. (78 U. S.) 581 (20 L. Ed. 216); *Insurance Co.* v. *Rodell,* 95 U. S. 232 (24 L. Ed. 433).

The trial court, in determining that plaintiff was entitled to recover, reached the correct conclusion. The judgment is affirmed, with costs to appellee.

SHARPE, REID, NORTH, and STARR, JJ., concurred with CARR, J.

BOYLES, J. (*concurring*). Decisions based on a vacancy in office have no bearing in this case. It is admitted that plaintiff was the incumbent register of deeds for the period during which he claims the compensation. He and his bondsmen were respon-

sible for the faithful and impartial discharge of the duties of his office during that period of time. 1 Comp. Laws 1929, § 1373 (Stat. Ann. § 5.981). Also, by statute, plaintiff and the sureties on his official bond were responsible for the faithful performance of his duties by his deputy. 1 Comp. Laws 1929, § 1375 (Stat. Ann. § 5.983). The salary attaches to the office and is payable to the incumbent. For these reasons I agree with Mr. Justice Carr.

Sharpe, Reid, North, and Starr, JJ., concurred with Boyles, J.

Butzel, C. J. (*dissenting*). The judgment should be reversed. I do not believe that the claim of plaintiff can in any sense be considered a just or a legal claim chargeable against the county of Oakland.

Section 1211, 1 Comp. Laws 1929 (Stat. Ann. § 5.559), provides in part:

"The said board shall have power, and it is hereby expressly authorized and directed:

"First, To audit all claims which are chargeable against the said county, as in section 8 above provided, and to draw warrants therefor, duly signed by its chairman and countersigned by the clerk; but no warrant shall be drawn or issued by said board except for the amount of a just claim against said county, which has been duly allowed by said board."

The Oakland county board of auditors on February 16, 1945, wrote to Mr. McQuaid a letter from which we quote in part as follows:

"a. Preparatory to entering the service you led us to believe that no claim would be made.

"b. You followed your conversations with us, with a public statement (Pontiac Daily Press, June 22, 1942) designed to give the public the same impression.

"c. You returned and filed claim for $8,637.50.

"d. After editorial criticism you stated in the press (February 9, 1945) that 'In October, 1942, during my absence, at the time salaries were set for county officers for the subsequent two years, each other office was given a raise in salary except the register of deeds,' when the facts were, as the 1942 Supervisors Journal will show (Book 18, page 42 Miscellaneous Resolution No. 1959), the salary for register of deeds was increased from $3,600 to $3,900 for the year 1943 and 1944.

"e. You did not earn or work for the money you seek.

"There is no righteous, upright, honest, pure, virtuous, proper or reasonable excuse for us to allow your claim."

The record shows that plaintiff requested that while he was in service no checks be issued to him; that the chairman of the board of auditors suggested that a check be drawn to him, and he endorse it back, and that he stated that the navy would not allow anybody to draw checks while they were in the service. He admitted on the stand that he gave the board reason to believe that he would not draw any checks during his absence. These statements were publicized in the press, and while in the service he was re-elected two successive terms after the expiration of the term during which he had enlisted in the navy.

The public did not know that he was contemplating claiming a salary for the period during which he was in the navy. It is very doubtful whether they would have re-elected him from time to time had they known that, although he had given notice that he would not draw any salary, and had insisted that no salary checks be issued to him, nevertheless, upon his discharge he would then demand salary for the entire period during which he was absent

and during which he received pay from the United States government.

I agree with the board of auditors in their finding that the claim was not a just one.· I am in accord with the letter as quoted. Plaintiff claims that he supervised and reviewed the work of his subordinates in the operation of his office at such time as he was able to secure leaves from service in the navy. He was away on the serious government business of war. He was not a commercial traveler who visited home periodically and spent some time there. The navy and army demands the entire time and attention of their officers and men practically to the exclusion of all other business. Plaintiff filed his petition with the board of auditors for allowance of his alleged claim in accordance with 1 Comp. Laws 1929, § 1211, from which we have heretofore quoted. He thus chose his remedy. The board of auditors had to determine whether the claim was just and they properly held it was not. This is not a mandamus action in which plaintiff might have encountered other difficulties, for mandamus is a matter of grace. Plaintiff has no moral claim. Neither do I believe he has a legal one.

Similar cases have arisen in other States. The issue in many of the cases was not whether the absentee officeholder was entitled to salary during the time he was away in the armed services, but whether by his absence and entrance into the armed forces he vacated his State office. We shall not dwell upon decisions where constitutional or statutory provisions bar officeholders from holding two offices, or a State and Federal office at the same time, but we merely state that in accordance with the following recent decisions plaintiff would not be entitled to his salary, and he could not regain his office except at the next regular election. *People,*

*ex rel. Cromer,* v. *Village of Maywood,* 381 Ill. 337
(45 N. E. [2d] 617); *State, ex rel. Cooper,* v. *Roth,*
140 Ohio St. 377 (44 N. E. [2d] 456); *Wimberly* v.
*Deacon,* 195 Okla. 561 (144 Pac. [2d] 447); *Commonwealth, ex rel. Crow,* v. *Smith,* 343 Pa. 446 (23 Atl.
[2d] 440); *Commonwealth, ex rel. Adams,* v. *Holleran,* 350 Pa. 461 (39 Atl. [2d] 612).

More interesting and pertinent is the case of
*Perkins* v. *Manning,* 59 Ariz. 60 (122 Pac. [2d] 857),
wherein it was declared as a matter of public policy,
without reliance upon any constitutional or statutory restrictions, that the office was vacated by
the officeholder's entry into the armed services. In
that particular case the officeholder attempted to
remain in office by a cloak of several continual 90
days' leaves of absence. He returned on military
leave before the respective 90 days' periods had
expired, consulted with the heads of the several departments under his jurisdiction, and from time to
time gave them additional instructions by correspondence. He also performed a certain amount of
the work of his office by correspondence and signed
many official documents sent to him in camp. The
court tore aside this subterfuge and stated "that
public policy requires that anyone accepting and retaining a public office should not place himself, by
the accepting of another office, in such a position that
it is physically impossible for him properly to perform the duties of both offices, and if the nature of
the two offices is such that this impossibility does
appear, the offices are incompatible and the acceptance of the second office, *ipso facto,* vacates the
first." We do not choose to go as far in the instant
case.

In *State, ex rel. Thomas,* v. *Wysong,* 125 W. Va.
369 (24 S. E. [2d] 463), the court in holding that
the office was not vacated especially noted the fact
that the claimant officeholder stated that he would

not accept any compensation as long as he remained in the military service of the United States.

A Montana statute held that the absence of the officeholder temporarily suspended his right to the office and salary. *Gullickson* v. *Mitchell,* 113 Mont. 359 (126 Pac. [2d] 1106). To like effect see *State, ex rel. Sanchez,* v. *Stapleton,* 48 N. M. 463 (152 Pac. [2d] 877).

In *Frazier* v. *Elmore,* 180 Tenn. 232 (173 S. W. [2d] 563), the Tennessee Constitution provided that no State officer could hold two offices, despite which the legislature passed a statute declaring that the office should not be deemed vacant during the absence of an officeholder while away on military duty, but the salary of the office should be paid to the temporary appointee. The court held that the absentee could not challenge the constitutionality of the statute which was enacted for his benefit and could not therefore attack the "just and equitable" salary provision.

Similarly, *Critchlow* v. *Monson,* 102 Utah, 378 (131 Pac. [2d] 794), held that the office was not vacated when the officeholder secured a leave of absence but commented upon the fact that the officeholder made no attempt to draw his salary or any of the emoluments of the office, and quoted with approval the following from *State, ex rel. Mc-Gaughey,* v. *Grayston,* 349 Mo. 700 (163 S. W. [2d] 335):

"The situation we are considering is analogous to a leave of absence as that term is understood in the business world. The common meaning of the term signifies temporary absence from duty with an intention to return, during which time remuneration is suspended."

The Missouri court, *supra,* did hold that the office was not vacated and the absence should be construed as similar to a leave of absence, and reaffirmed this

principle in *State, ex rel. McKittrick,* v. *Wilson,* 350 Mo. 486 (166 S. W. [2d] 499, 143 A. L. R. 1465).

In some earlier decisions in Kentucky, it was held that the office was not vacated, but the salary issue was not discussed. However, in *City of Monticello* v. *Tate,* 296 Ky. 569 (178 S. W. [2d] 27), the officeholder not only claimed that he was entitled to the office but sued for the salary for the period in which he was absent. The court held that while the office was not vacated during his absence, neither was he entitled to the salary, and stated:

"We are definitely of the opinion that a public officer is not entitled to the emoluments of his office while he is serving in the armed forces. As heretofore pointed out, his occupancy or holding of his civil office is suspended, and we fail to see how it can be contended seriously that he is entitled to remuneration therefrom under such a condition."

In California by a series of decisions it was held that a voluntary enlistee does not vacate his office and his absence is in the nature of a military leave, not restricted by the constitutional provision denying the legislature the power to grant a judicial officer a leave of absence, and in accordance therewith the absentee was not entitled to any pay while he was in the armed services. *McCoy* v. *Board of Supervisors of the County of Los Angeles,* 18 Cal. (2d) 193 (114 Pac. [2d] 569); *People, ex rel. Happell,* v. *Sischo,* 23 Cal. (2d) 478 (144 Pac. [2d] 785, 150 A. L. R. 1431); *Weinberger* v. *Riley,* 23 Cal. (2d) 499 (144 Pac. [2d] 796).

We quote from *State, ex rel. Clinger,* v. *Shell,* 71 Ohio App. 555 (50 N. E. [2d] 568) (appeal dismissed in 141 Ohio St. 474 [48 N. E. (2d) 1009]):

"This court recognizes the general proposition that an elected official is entitled to the emoluments

of his office including his salary. However, it seems patent that to receive public moneys for duties never performed, while at the same time being remunerated through another source for the same period for activities in an entirely different field, is wholly against the public good. We cannot ignore the fact that civil government must be maintained. The expense is defrayed by the taxpayer. The adoption of a policy whereby that expense, for an elective office, is doubled for the taxpayer, already burdened with the expense of the prosecution of a war, is apt, to endanger the orderly processes of government. Such a policy would shake public morale. This court, having the right and duty in this case, where the extraordinary remedy of mandamus is sought, to exercise its sound discretion, must deny the writ on the ground that it unduly burdens taxpayers and endangers the orderly processes of government, and that it would afford remuneration for duties never performed.

"We arrive at the foregoing conclusion whether or not a legal right is possessed by the relator. However, we seriously doubt the existence of a legal right. It will be noted that the legislature, in its enactment relative to vacancy, is entirely silent on the subject of salary. While we have stated that we recognize the general proposition of law that an elected official is entitled to the emoluments of his office and that the salary is a part thereof, yet we cannot lose sight of the equally true abstraction that it is for duties performed and services rendered that remuneration and salary is fixed and paid. The failure to perform a duty or render a service enjoined by law cannot become the grounds for remuneration under the circumstances of this case. We fully recognize and give complete effect to the enactment of the legislature insofar as the unequivocal language specifies. It is devoted to the proposition of vacancy alone and is entirely silent on the subject of salary. The enactment

should bear a strict construction and like all other enactments should not be made the subject of judicial legislation. The circumstances of the instant case constitute it an exception and the general rules relative to salary and remuneration are not applicable. To hold otherwise would be to adopt a legal reasoning resulting in a conclusion shocking to any sense of equity and good judgment."

The theory of "leave of absence" which denies any salary during the time the officer is in the armed services does not conflict with any constitutional provision against diminishing the salary of an officer after his election or appointment to office. West Virginia, Montana, New Mexico, Tennessee, Utah, Missouri, Kentucky, California and Ohio, all had constitutional provisions which would bar the diminishing of the salary of the officer involved.

There are but two decisions to the contrary involving officers who had entered the armed services. *Carpenter* v. *Sheppard,* 135 Tex. 413 (145 S. W. [2d] 562), writ of certiorari denied in 312 U. S. 697 (61 Sup. Ct. 734, 85 L. Ed. 1132), held that because of a 1932 amendment to the Texas Constitution, the office was not vacated. The claimant was appointed to the Texas unemployment commission while a major in the National Guard and was called to active duty and detailed to duty with the military department of the State of Texas at Austin, the capital. He, however, was able to perform all of his duties as a member of the Texas unemployment commission and was held entitled to his full salary for the month of September. (He was called to active duty September 19, 1940, and his term as commissioner expired November 21, 1940.) The court stated:

"If the legislature should conclude that an officer in the National Guard cannot perform the duties of

the office held by him in this State, while temporarily in the active military service of the United States, it may make provisions for such inability, just as it has made similar provisions in respect to other State offices, where the head of the department is unable for any reason to perform the duties of the office. It may adjust salaries on account of failure to perform the duties assigned to officers."

In *Cramer* v. *Sheppard,* 140 Tex. 271 (167 S. W. [2d] 147), the court found that the office was not vacated but deliberately pointed out that the officer did "specifically waive" compensation while serving in the armed forces.

The case of *State, ex rel. Kopinski,* v. *Grzeskowiak,* 223 Ind. 189 (59 N. E. [2d] 110), upholds plaintiff's claim, but this is a minority view, and the facts show that the officeholder, who received a medical discharge, spent but the first four months of his term of office as justice of the peace in the army. This included furlough time at home, during which time he was sworn in and appointed a justice *pro tem.* for 60 days.

We shall not attempt to distinguish the above decision. We wish merely to say that we believe the majority view, amply supported by the decisions of other jurisdictions, is to regard service in the armed forces as entitling the officeholder to a military leave of absence during which time the pay is suspended. Nor do we think it "just" in any sense of the word to permit the officeholder to gain public moneys on the flimsy excuse that he was entitled to visit his office while on furlough, and thus did perform the work of the office. As a matter of public policy we hold that the office is not vacated, but that the pay is suspended during the time claimant served in the armed forces of the United States government.

The judgment of the lower court should be reversed, and the case remanded for purpose of entering judgment for defendants. A public question being involved, no costs should be allowed.

BUSHNELL, J., concurred with BUTZEL, C. J.